1  Andrew Ivchenko (#021145)
2  **ANDREW IVCHENKO, PLLC**
   4960 South Gilbert Road, #1-226
3  Chandler, Arizona 85249
   Phone: (480) 250-4514
4  aivchenkopllc@gmail.com

5
   Daniel L. Kloberdanz (#012231)
6  **KOZUB KLOBERDANZ**
7  7537 East McDonald Drive
   Scottsdale, Arizona 85250
8  Phone: (480) 624-2700
   dkloberdanz@bkl-az.com
9

10  *Attorneys for Plaintiffs Brian Houston and Putative Class*

11          **IN THE UNITED STATES DISTRICT COURT**

12          **FOR THE DISTRICT OF ARIZONA**

13

14  Brian Houston, a married man; and other
    persons similarly situated (the Class),
15
                              Plaintiffs,
16  vs.                                         **CLASS ACTION**
                                                **COMPLAINT**
17
    Maricopa County, Arizona; Paul Penzone,
18  Sheriff of Maricopa County, Arizona and
    Jane Doe Penzone,
19                                              (Jury demand made by Plaintiffs)
20                              Defendants.
21

22          Plaintiff Brian Houston and on behalf of all other persons similarly situated as

23  defined below (collectively "Plaintiffs"), by and through their undersigned counsel, for

24  their Complaint against Defendants Maricopa County ("Maricopa County" or the

25  "County") and Maricopa County Sheriff Paul Penzone and Jane Doe Penzone ("Sheriff

26
27  Penzone"), allege as follows:

28
                              -1-

**INTRODUCTION**

1.      Plaintiff and the putative Class are persons who have been booked in the Maricopa County jail system and who have had their booking photograph (referred to by Sheriff Penzone on the subject website as a "mugshot"), criminal justice record, and other personal, confidential and identifying information (including their name, birthdate, weight, height, hair color and eye color) digitally published by Sheriff Penzone on the official MCSO Website with the domain name mcso.org (the "MCSO Website").

2.      At all times relevant, Sheriff Penzone's publication of such information was presented in a rogues' gallery display of a collection of booking photograph images, with each of the Plaintiffs' personal and confidential information published next to the words "Crime Type."

3.      At all times relevant, the MCSO Website was and continues to be accessible to the public on the internet.

4.      At all times relevant, the booking photographs and other personal and confidential information of Plaintiffs were displayed by Sheriff Penzone on the MCSO website for approximately three days on the website page entitled "Mugshot Lookup."

5.      This class action lawsuit arises from the Defendants' wrongful publication on the internet (through the MCSO Website) of such booking photographs and other personal and confidential information of Plaintiffs.

//

//

//

-2-

**PARTIES, VENUE AND JURISDICTION**

6.     This Court has subject-matter jurisdiction over this action pursuant to 42 U.S.C. § 1983 (civil rights action) and 28 U.S.C. § 1331 (arising under the Constitution).

7.     This Court may grant relief under 28 U.S.C. §§ 2201-02 (declaratory relief); Federal Rules of Civil Procedure Rule 65 (injunctive relief) and Rule 23 (class action); and the Fourteenth Amendment of the United States Constitution, among other reasons set forth below.

8.     Venue is proper in the federal District of Arizona pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims (including the Class members' claims) occurred in the District of Arizona.

9.     At all times relevant, Plaintiff Brian Houston ("Houston") was and is a married man and a resident of Maricopa County, Arizona, and a citizen of the United States of America.

10.     All of the material events alleged in this Complaint originated in Maricopa County, Arizona.  However, Defendants' publication of the personal and confidential information of Plaintiffs has been and continues to be made available for viewing worldwide on the internet.

11.     Maricopa County is a county organized under the laws of Arizona.  Maricopa County is a political subdivision formed and designated as such pursuant to Title 11 of the Arizona Revised Statutes.

12.     At all times relevant, Sheriff Penzone was and is the Sheriff for Maricopa County, also known as the Maricopa County Sheriff's Office (the "MCSO"), which is,

upon information and belief, a non-jural entity and an agency of Maricopa County.  Sheriff Penzone was at all relevant times the Sheriff of Maricopa County and acting within the scope of his employment as Sheriff.  Sheriff Penzone is responsible for, among other things, the implementation of the policies and/or practices of Maricopa County including but not limited to, the control, supervision, operation and administration of the MCSO, and specifically the control, supervision, operation and administration of the MCSO website.

13.    The marital status of Sheriff Penzone is not known to Plaintiffs.  Therefore, Plaintiffs allege upon information and belief, Sheriff Penzone and Defendant Jane Doe Penzone are, and were at all times relevant, a married couple acting for the behalf of their marital community.  Plaintiffs also bring this action against Sheriff Penzone in his official capacities as the Sheriff of Maricopa County.

14.    For the reasons explained below, Maricopa County is liable for the practices and policies of Sheriff Penzone (including the MCSO Website) which are the subject of this Complaint.

15.    Upon information and belief, Sheriff Penzone is the final decision-maker for the law enforcement operations in Maricopa County with respect to the process and procedures alleged in this Complaint concerning the digital publication of booking photographs (also known as "mugshots") and other personal and confidential information of Houston and the other persons constituting the Class.  This includes Sheriff Penzone's decision to digitally publish booking photographs and other personal and confidential information of Plaintiffs on the MCSO Website.

-4-

16.     Upon information and belief, Sheriff Penzone and the MCSO acted under color of law with respect to the events described in this Complaint, including with respect to the digital publication of Plaintiffs' booking photographs and other personal and confidential information on the MCSO Website.

17.     Specifically, Plaintiffs allege, upon information and belief, that Maricopa County and Sheriff Penzone are jointly and severally liable for the acts as set forth in this Complaint, including but not limited to the digital publication of Plaintiffs' mugshots and other personal and confidential information, all which were accomplished by Defendants without any due process of law and in violation of Plaintiffs' rights of privacy recognized under Arizona's public records laws, the Arizona constitution (Article II, Section 8), and Sheriff Penzone's own published Policy and Procedures (Policy GF-3).

18.     Specifically, Plaintiffs allege, upon information and belief, that Maricopa County and Sheriff Penzone are jointly and severally liable for the acts as set forth in this Complaint, including but not limited to the publication of Plaintiffs' mugshots and other personal and confidential information, all which were done by Defendants without any due process of law and in violation of Plaintiffs' constitutional rights recognized under the United States Constitution and applicable under the Fourteenth Amendment.

19.     This Court also has jurisdiction over the subject matter of this Complaint under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and 28 U.S.C. §1331 (federal question), 28 U.S.C. §1343 (civil rights) and this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

20.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 and otherwise, because Maricopa County is a political subdivision that is located in this jurisdiction, and the Defendants' acts that give rise to this lawsuit originated within the District of Arizona.

21.     Plaintiffs also bring this action against Maricopa County and Sheriff Penzone under 42 U.S.C. §1983 *et seq*., which provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the United States Constitution and the laws of the United States.

22.     Specifically, Plaintiffs allege that: (1) they have been deprived of a right secured by the United States Constitution and the laws of the United States, and (2) the deprivation occurred under color of state law.

**BRIAN HOUSTON'S NOTICE OF CLAIM**
**(INCLUDES THE NOTICE OF CLAIM FOR THE CLASS)**

23.     To the extent a Notice of Claim under Arizona law is required for the claims made in this Complaint, Houston has timely complied with the Notice of Claim provisions of A.R.S. §12-821.01, by timely serving a Notice of Claim (the "Notice of Claim") upon both Maricopa County and Sheriff Penzone.

24.     The Notice of Claim was served on both the County and Sheriff Penzone on March 23, 2022.

25.     A true and correct copy of Houston's Notice of Claim is attached to this Complaint as Exhibit "1."  The allegations contained in the attached Notice of Claim are hereby incorporated by reference into this Complaint.

26.    The Notice of Claim was submitted on behalf of Houston and the Class in relation to the actions described in the attached Notice of Claim, including but not limited to Sheriff Penzone's actions in publishing the booking photograph and personal and confidential information of certain persons processed in the Maricopa County jail system, including Plaintiffs.

27.    The Notice of Claim was submitted in relation to the violation of Plaintiffs' civil rights and other federal and state causes of action against the County and Sheriff Penzone, as described in such Notice of Claim, which is incorporated herein by reference, and as further described in this Complaint.

## BRIAN HOUSTON'S FACTUAL BACKGROUND

28.    Brian Houston ("Houston") brings this action in relation to the conduct described below by the County and Sheriff Penzone, with respect to the wrongful digital publication of his booking photograph (also known as a "mugshot"), criminal justice record, and other personal and confidential information on the MCSO Website made in relation to his arrest and booking.

29.    Houston was arrested by the Phoenix Police Department on January 27, 2022 and charged with assault.  Houston was booked in the Maricopa County jail on that date, at which time his booking photograph was taken by the Sheriff.  The Sheriff then digitally published Houston's photograph, along with his personal and confidential information for a period of approximately three days on the MCSO Website.

30.    During the time the booking photograph and other information were published on the MCSO Website, at least one private online mugshot operator scraped

Houston's booking photograph, arrests records and personal information (including his date of birth) and published such information on its website.

31.    As a result of such scraping, Houston's personal and confidential information has been memorialized on the internet for all time.  The business and personal reputation of Houston has been permanently damaged as a result of the Sheriff's publication on its official website.  As well, the digital publication of personal and confidential information has placed Houston at risk of identity theft, fraud and extortion.

32.    After Sheriff Penzone's publication of Houston's mugshot, the charges against Houston were not pursued by the City of Phoenix prosecutor's office and his case was dismissed.  No notification of this dismissal was ever published by Sheriff Penzone.

33.    Prior to Sheriff Penzone's digital publication of Houston's information, Defendants were aware of the risks that online mugshot operators and cyber criminals might scrape such information and/or use the published information for illegal or improper purposes, or otherwise harm the reputation of persons such as Houston.

**COMMON FACTUAL ALLEGATIONS TO CLASS**

34.    On the "Mugshot Lookup" page of the MCSO Website, Sheriff Penzone displays a rotating "rogues' gallery" of recent arrestees for approximately three days, by publishing their booking photograph, personal and confidential information (birthdate and other personal identifying information including height, weight, hair color and eye color) along with the words "Crime Type" next to a designated notation of a crime or crimes.

35.    Since 1998, it has been well-established by the Arizona Supreme Court that birthdates of individuals, although public records, are "private and confidential" and should

not be disclosed by the government under Arizona's public records law. *Scottsdale Unified School District No. 48 of Maricopa County v. KPNX Broadcasting Co.*, 191 Ariz. 297 (Ariz. 1998).

36. At all times material, Sheriff Penzone's own published Policy and Procedures on the disclosure of criminal records (Policy GF-3) expressly requires: "*Information determined to be personal identifying information or locating information shall be redacted.*"

37. In that same Policy GF-3, "identifying information" is defined as including "a date of birth."

38. At all times material, Policy GF-3 appears on the same website as Sheriff Penzone publishes Plaintiffs' mugshots and other personal and confidential information.

39. Through the evening of April 4, 2022 or the early morning of the following day, Sheriff Penzone enabled the official MCSO website to display targeted Google AdSense affiliate advertisements that appeared when a website visitor performed a word search on the MCSO website. Upon information and belief, at all times prior to April 5, 2022, Defendants have used the MCSO Website to generate advertising revenue with the Google AdSense ads.

40. At least some of those Google AdSense ads directed website visitors to background check and reputation management service providers that are advertising affiliates of certain mugshot website companies that operate in violation of Arizona law.

41. Upon information and belief, due to the Sheriff's unlawful publishing of Plaintiffs' mugshot photograph, name, birthdate, height, weight, hair color and eye color,

their private and confidential information were either scraped or made available to be scraped by a variety of predatory website operators.

42.     Direct links to many of the Plaintiffs' mugshots and personal and confidential information appear at the top or near the top of search results on multiple search engines, including but not limited to Yahoo.com, Bing.com, and other search engines.

43.     Once Plaintiffs' images and personal and confidential information are online, they live on in perpetuity. They serve as the digital scarlet letter of our times, permanently affecting the reputation of those who have paid their debt to society and of those who were never convicted of any crime.

44.     Upon information and belief, the MCSO Website is intentionally optimized to direct internet traffic toward the "Mugshot Lookup" gallery.

45.     Upon information and belief, Defendants use the display of mugshots to enhance Sheriff Penzone's reputation and/or to punish and humiliate arrestees all without due process under the law.

46.     Upon information and belief, Defendants are aware that Plaintiffs' mugshots and other personal and confidential information are being scraped by a variety of predatory website operators, who then memorialize this information for eternity, thereby greatly enhancing the punishment and humiliation Defendants intend to inflict on Plaintiffs.

47.     Upon information and belief, Sheriff Penzone exploits this embarrassing and humiliating information that falsely conveys guilt for commercial gain. Regardless of the type of advertisers appearing on the MCSO website, Sheriff Penzone used Plaintiffs' mugshots and other personal and confidential information for commercial purposes

through the evening of April 4, 2022 or the following day.  This fact is shown by the targeted ads from multiple advertisers appearing on the MCSO website, generated from Google AdSense, a Google affiliate advertising program designed for website publishers to monetize their website content.

48.    In 1998, the Arizona Supreme Court clearly established that under Arizona's public records laws, a person "has a privacy interest in his or her birth date." *Scottsdale Unified School*, 191 Ariz. at 302.  The Arizona Supreme Court held that even though the birthdates of teachers are part of the "public record," the privacy interests of individual teachers take precedence over any possible public interest favoring disclosure.  The Arizona Supreme Court made such a determination even though the party seeking the information in that lawsuit claimed the birthdates were necessary to run criminal background checks on teachers in public schools:

> Whether a person's birth date may be subject to a privacy claim is a question of first impression in Arizona. **We again look for guidance to federal cases construing the FOIA**. Although we have never defined the meaning of privacy under the Public Records Law, **the Supreme Court, interpreting the FOIA, has stated that information is "private if it is intended for or restricted to the use of a particular person or group or class of persons: not freely available to the public."** *Reporters Comm.*, 489 U.S. at 763-64, 109 S.Ct. at 1477 (footnote omitted) (internal quotations omitted). The Court has also stated that the privacy interest encompasses "the individual's control of information concerning his or her person." Id. at 763, 109 S.Ct. at 1476.
>
> ¶15 One federal case directly addresses the issue of whether birth dates are private or confidential information. In *Oliva v. United States*, **the court held that disclosure of birth dates and social security numbers would violate the FOIA as it "would constitute a clearly unwarranted invasion of personal privacy."** 756 F.Supp. 105, 107 (E.D.N.Y.1991) (citation omitted). It found that "social security

-11-

numbers, and dates of birth, are a private matter." Id. (Emphasis added).

*Scottsdale Unified School*, 191 Ariz. at 302-03.

49.    Upon information and belief, Sheriff Penzone's improper disclosure of Plaintiffs' birthdates was the causation for much of the resulting harm to Plaintiffs' online reputation.

50.    Upon information and belief, Sheriff Penzone's improper disclosure of Plaintiffs' birthdates, accompanying the mugshot photograph and Plaintiffs' full name, provides the predatory mugshot websites the crucial commodity they need to work their extortion and/or damage Plaintiffs' reputation.

51.    This type of harm caused by Sheriff Penzone publishing birthdates is exactly the concern the Arizona Supreme Court warned against when concluding birthdates are private and should not be disclosed as a public record:

> Like social security numbers, **birth dates may be used to gather great amounts of private information about individuals**. (FN omitted)
>
> ¶18 **With both a name and <u>birth date</u>, one can obtain information about an individual's criminal record, arrest record (which may not include disposition of the charges), driving record, state of origin, political party affiliation, social security number, current and past addresses, civil litigation record, liens, property owned, credit history, financial accounts, and, quite possibly, information concerning an individual's complete medical and military histories, and insurance and investment portfolio.**
>
> ¶19 **Based on the foregoing, we conclude that a person, including a public school teacher, has a privacy interest in his or her <u>birth date</u>.** (Emphasis added).

*Scottsdale Unified School,* 191 Ariz. at 302-03.

-12-

52.     In *Scottsdale Unified School*, the Arizona Supreme Court then performed the *Carlson* balancing test and concluded the public interest in disclosure of birthdates to perform criminal background checks on teachers "is at best speculative" and therefore disclosure of birthdates would be improper.  *See Carlson v. Pima County,* 141 Ariz. 487, 491 (1984) (A public officer may refuse release or inspection of a public record if such disclosure "might lead to substantial and irreparable private or public harm.").

53.     In 2007, the Arizona Supreme Court further explained in *Griffis v. Pinal County*, 215 Ariz. 1 (2007), that records of a purely private nature are *not public records*, and to the extent a record is deemed to be public, the court must perform the *Carlson* balancing test to determine whether "privacy, confidentiality, or the best interests of the state outweigh the policy in favor of disclosure:"

> **Because the nature and purpose of the document determine its status, mere possession of a document by a public officer or agency does not by itself make that document a public record,** *id.,* **nor does expenditure of public funds in creating the document,** *id.* **at 540-41, 815 P.2d at 909-10. . . . The public records law was never intended to encompass such documents; the purpose of the law is to open** *government* **activity to public scrutiny, not to disclose information about private citizens**. (citations omitted) . . .

> The reason for this requirement is clear: **Disclosure of purely private documents does nothing to advance the purposes underlying the public records law**. The contents of purely private documents shed no light on how the government is conducting its business or spending taxpayer money. (Emphasis added)

*Griffis*, 215 Ariz. at 3-4.

//

54.     There is no valid justification for Sheriff Penzone's publication on the MCSO Website of Plaintiffs' booking photographs and other personal and confidential information.

55.     Under federal and state law, each of the Plaintiffs were presumed innocent at the time Sheriff Penzone published their mugshot and personal and confidential information on the internet.

56.     Sheriff Penzone's disclosure of such purely private matters violates "clearly established" Arizona law <u>and</u> violates Sheriff Penzone's published MCSO Policy and Procedures (GF-3).  The MCSO Policy expressly mandates: "*Information determined to be personal identifying information or locating information <u>shall be redacted</u>.*"   In that same MCSO policy, "identifying information" is defined to include "*a date of birth.*"

57.     Plaintiffs' booking photographs (mugshots) and personal and confidential information (which includes their name and birthdate among other identifying information) were digitally published by Sheriff Penzone on the MCSO Website either while they were in custody in the Maricopa County jail system or within hours of their release.

58.     In each instance, the published booking photographs of Plaintiffs were coupled with personal data, including name, height, weight, eye color, hair color and birthdate.

59.     Sheriff Penzone's publication on his website of such information wrongfully implies to the public that Plaintiffs are guilty of a crime.

//

//

60.     The MCSO website does not contain a disclaimer stating the individuals shown on the "Mugshot Lookup" have not been convicted of any crime, nor that such individuals are presumed innocent until proven guilty.

61.     The Plaintiffs' reputation in the business community, as well as in their personal life, has been severely and permanently damaged as a result of the wrongful conduct of Sheriff Penzone and the County in publishing their mugshots and other personal and confidential information, which was all done without any due process under the law.

62.     Upon information and belief, Sheriff Penzone and the County were aware that the online publishing of a person's mugshot, regardless of that person's guilt or innocence, will result in permanent reputational harm, as well as exposing such person to blackmail and extortion by unscrupulous mugshot website operators and reputation management companies, as well as the potential for identity theft and fraud by cybercriminals.

63.     Plaintiff Houston was of no risk to the community, and there was no justifiable reason for Sheriff Penzone or the County to publish his mugshot online, including his name and birthdate and other identifying information.  The same can be said for virtually every other member of the Class.

64.     There was no legitimate state interest in publishing Houston's mugshot and personal information, and upon information and belief, the same can be said with respect to virtually every other member of the Class.

65.     Upon information and belief, the mugshot gallery on the MCSO Website serves the improper function of promoting Sheriff Penzone and the MCSO and damaging

the reputation of those persons who have yet to be convicted of any crime, including Houston and the other members of the Class, while simultaneously exposing those person's personal and confidential data online.

## STATE LAW LEGAL BASIS FOR PLAINTIFFS' CLAIMS

66.     When Sheriff Penzone digitally published Plaintiffs' mugshot photographs and criminal justice records (including the Plaintiffs' birthdates and other identifying information) on the MCSO Website, Defendants violated Plaintiffs' rights to privacy that have long been recognized under Arizona law.

67.     As explained above, Sheriff Penzone's digital publication of such mugshot photographs and personal and confidential information was done in direct contravention to well-established Arizona public records laws.

68.     Sheriff Penzone's digital publication on the internet of Plaintiffs' personal and confidential information was done in direct contravention of Sheriff Penzone's own published Policy and Procedures (Policy GF-3).

69.     Upon information and belief, Sheriff Penzone was also acting as a "Mugshot Website Operator" under Arizona law, at all times up until the evening of April 4, 2022 or the following day, because Sheriff Penzone allowed targeted Google AdSense advertisements on the MCSO Website.

70.     Upon information and belief, at all times up until the evening of April 4, 2022 or the following day, Sheriff Penzone digitally published mugshots and criminal justice records of arrestees such as Plaintiffs for the anticipation of financial gain, or for other improper purposes.

71.     Upon information and belief, at all times up until the evening of April 4, 2022, or the early morning of April 5, 2022, Sheriff Penzone was a person who is a "mugshot website operator" as defined under the Arizona Mugshot Act, A.R.S. § 44-7901, *et seq.* (the "Mugshot Act") and was acting in violation of the Mugshot Act by publishing criminal justice records for a commercial purpose.

**CLASS ALLEGATIONS**

72.     Pursuant to the Federal Rules of Civil Procedure, Rule 23(c)(5), Plaintiff Houston seeks to represent the following persons (defined as the "Class").

73.     Plaintiff Houston brings this action on behalf of himself and the Class pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2), and/or 23(b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.  The Class includes all persons who were booked in the Maricopa County jail system and who had their mugshot and other personal and confidential information digitally published by Sheriff Penzone on the MCSO Website, as follows:

(1)     Class One - Those persons whose mugshot and other personal and confidential information were digitally published by Sheriff Penzone on the MCSO Website, between on or about September 24, 2021 through the date of the filing of this Complaint.  (Note: the date of September 24, 2021 is that date which is 180 days preceding the date the Notice of Claim was served, being served on March 23, 2022.)

(2)     Class Two - Those persons whose mugshot and other personal and confidential information were digitally published by Sheriff Penzone on the MCSO Website, after the date of the filing of this Complaint.

(3)    Class Three - Those persons whose mugshot and other personal and confidential information were digitally published by Sheriff Penzone on the MCSO Website, prior to September 24, 2021 but after that date which is one (1) year preceding the filing of this Complaint.

(4)    Class Four - Those persons whose mugshot and other personal and confidential information were digitally published by Sheriff Penzone on the MCSO Website, within two (2) years from the date of the filing of this Complaint, but more than one (1) year preceding the date of the filing of this Complaint.

74.    Class One may be subject to being divided into two subsets, to take into consideration the fact that Sheriff Penzone ceased using Google AdSense ads after Houston's Notice of Claim was served but before this lawsuit is being filed (relating to Plaintiffs' allegations that Sheriff Penzone was a "mugshot website operator" as defined under Arizona's Mugshot Act).  Upon information and belief, such Google AdSense ads were published at all times on the MCSO Website until the evening of April 4, 2022, or the early morning of April 5, 2022.

| CLASS TYPE | DATE OF PUBLICATION OF ARRESTEE'S BOOKING PHOTOGRAPH ON THE OFFICIAL MCSO WEBSITE | DESCRIPTION OF CLASS |
|---|---|---|
| Class 1 | The last publication occurred on or after September 24, 2021 and the first publication occurred on or before the date this lawsuit has been filed, May 23, 2022. | This Class 1 is the group of persons whose claims are included within the 180-day period preceding the service of Houston's notice of claim filed on behalf of the putative class. (*September 24, 2021 is that date which is 180 days preceding the date of service of the Notice of Claim, which was served on Defendants on March 23, 2022*) |

| Class 2 | The first publication occurred on or after May 24, 2022 (*i.e.*, the day after this lawsuit has been filed). | This Class 2 is the group of persons who have had their first publication occur after the date this lawsuit is filed, which is being filed on May 23, 2022. *This Class 2 should have identical claims to those members of Class 1 who had their last publication occur after April 4 or April 5, 2022, unless and until Defendants take action that affects such future claims (in which case a subclass shall be formed, as appropriate).* |
| --- | --- | --- |
| Class 3 | The last publication occurred between May 24, 2021 and November 25, 2021. | This Class 3 is the group of persons who have had their last publication occur within one year from the filing of this lawsuit (that one-year period beginning on May 24, 2021) but who are outside the 180-day period from Houston's Notice of Claim (*i.e.*, the last publication occurred prior to November 25, 2021). *The claims in this Class 3 are within the one-year statute of limitations period as may be applicable, but outside the 180-day Notice of Claim period as may be applicable.* |
| Class 4 | The last publication occurred between May 24, 2020 and May 23, 2021. | This Class 4 is the group of persons who have had their last publication occur within two (2) years from the date of the filing of the lawsuit (that date being May 24, 2020), but who have had their last publication occur one year or more preceding the date of the filing of the lawsuit. *This group is outside the one-year statute of limitations period.* |

75.    The Classes identified above shall be collectively referred to as the "Class." The Classes as defined above are segregated into groups of persons based on the potential statute of limitations for some or all of the claims alleged in this Complaint, or other potential limitations of recovery including the service of a statutory Notice of Claim upon Defendants, which in the case of Brian Houston (on behalf of himself and the putative Class) occurred on March 23, 2022.

- The statute of limitations for personal injury actions in a § 1983 lawsuit is controlled by the statute of limitations for personal injury actions in the State of Arizona, which is two years.  A.R.S. § 12-542.

- The statute of limitations for actions against any public entity or public employee is one year.  A.R.S. § 12-821.

- Similarly, Arizona has a one-year statute of limitations for actions based upon a liability created by statute.  A.R.S. § 12-541(5).

- A.R.S. § 12-821.01 requires the service of a 'notice of claim' before filing suit for certain claims, which statute bars certain claims not filed within 180 days after the cause of action accrues.

- To the extent the claims alleged in this Complaint may constitute § 1983 claims, the notice of claim statute is inapplicable.  *Morgan v. City of Phoenix,* 162 Ariz. 581, 584 (App. 1989).

76.    Specifically excluded from the Class are Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by

Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

77.    **Numerosity.**   Upon information and belief, the members of the proposed Class are geographically dispersed throughout the State of Arizona and the United States and are so numerous that individual joinder is impracticable.

78.    Upon information and belief, Plaintiffs reasonably estimate that there are between 23,000 and 90,000 individuals who are members of the proposed Class.

79.    Although the precise number of proposed members is unknown to Plaintiffs, this information should be known by Defendants, who maintain records of each person booked in the Maricopa County jail system.

80.    Members of the Class may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants, or any other method approved by the Court.

81.    **Typicality and Commonality.**    The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all members of the Class, has had his mugshot and personal and confidential information digitally published by Sheriff Penzone on the MCSO Website.

82.    Further, the factual bases of Defendants' misconduct are common to all members of the Class and represent a common thread of misconduct resulting in injury to all members of the Class.

83.    **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions include, but are not limited to, the following:

(a)    whether Defendants are liable to Plaintiff Houston and the Class for the wrongful publication of their mugshots and personal and confidential information on the MCSO Website;

(b)    whether as a result of such wrongful publication, Houston and the Class have sustained monetary loss and the proper measure of that loss; and

(c)    whether as a result of such wrongful publication, Houston and the Class are entitled to recovery against Defendants for such wrongful publication.

84.    **Adequacy of Representation.**  Plaintiff Houston will fairly and adequately protect the interests of the Class.

85.    Plaintiff has retained the undersigned counsel who are experienced in litigation involving mugshot publications and Plaintiff intends to vigorously prosecute this action on behalf of the Class.

86.    Plaintiff Houston has no interests that are antagonistic to those of the Class.

87.    **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by members of the Class are relatively small compared to the significant burden and expense of individual litigation of their claims against Defendants.

88.     It would be virtually impossible for members of the Class, on an individual basis, to obtain effective redress for the wrongs committed against them by Defendants. Furthermore, even if members of the Class could afford such individualized litigation, the court system could not afford such individualized litigation. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

89.     In the alternative, the Class may be certified because:

(a)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants; and/or

(b)     declaratory or injunctive relief is appropriate based on the Defendants' continuing acts with respect to the Class generally; and/or

(c)     The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

# CAUSES OF ACTION

## COUNT ONE
### (VIOLATION OF ARIZONA LAW:
### INVASION OF PRIVACY AND FALSE LIGHT AND
### VIOLATION OF ARIZONA'S PUBLIC RECORDS LAWS)

90.     With respect to each of the members of the Class, shortly after their arrest, their mugshot and personal and confidential information were digitally published by Sheriff Penzone on the MCSO Website, which is publicly accessible on the internet.

91.     The portion of the MCSO Website displaying the mugshots is available to the general public and is promoted by Sheriff Penzone on the main website (the home page), with a specific link to the "Mugshot Lookup" page which shows a gallery of mugshots along with personal and confidential information of persons such as Plaintiffs.

92.     Sheriff Penzone's publication harms the personal and business reputation of persons displayed on the MCSO Website, so as to lower that person in the estimation of the community or to deter others from associating or dealing with that person, among other things.

93.     Sheriff Penzone's online publication of private information, such as birthdate, increases plaintiffs' risk of identity theft and fraud, and further damages such person's reputation.

94.     Maricopa County and Sheriff Penzone acted with actual malice or reckless indifference as to the rights of each individual who had their mugshot and personal and confidential information published on the MCSO Website.

95.    Because Plaintiffs' mugshot and personal and confidential information were digitally published by Sheriff Penzone on the MCSO Website, this information was readily made available to the public, and constitutes an improper release of information under Arizona's public records laws, the Arizona Constitution, and Sheriff Penzone's own published policy, Policy GF-3.

96.    Because Plaintiffs' mugshot and personal and confidential information were digitally published by Sheriff Penzone on the MCSO Website, this information was easily copied (i.e., digitally scraped) by others and republished on their websites for improper and illegal purposes with the possibility of such information being used for the purpose of identity theft and/or fraud, or to otherwise harm such Plaintiffs' reputation.

97.    The Mugshot Lookup page of the MCSO Website conveys the message to any reasonable reader that the persons shown on the website are either guilty of a crime or likely to be guilty of a crime.

98.    The MCSO Website contains no disclaimer or statement that provides for a presumption of the arrestee's innocence.  Upon information and belief, Sheriff Penzone and the County intentionally removed the disclaimer of innocence that had previously appeared on the MCSO Website when Joe Arpaio was the sheriff (prior to January 1, 2017, the date Sheriff Penzone took office).  Upon information and belief, the current design of the MCSO Website, including but not limited to the lack of any disclaimer of innocence appearing on the website and the references to the derogatory terms "Mugshot Lookup" and "Crime Type," is intentional on the part of Sheriff Penzone and the County and is

-25-

further designed to punish and humiliate such arrestees without due process of law and without advancing any legitimate law enforcement purpose.

99.    Upon information and belief, the current "Mugshot Lookup" webpage is a continuation of a long history by the County and the Maricopa County Sheriff's Office to use and exploit booking photographs and personal information to punish and humiliate the arrestees who are booked in the Maricopa County jail system.  Upon information and belief, the Maricopa County Sheriff's Office has used and continues to use the booking photographs in a manner which unlawfully discriminates against arrestees based on race, national origin, gender and handicap.

100.    The MCSO Website is designed to ridicule and punish and harm persons who are supposed to be presumed innocent under the law and who have not been convicted of a crime, including those persons who have not actually committed the alleged crime.

101.    The mugshots are displayed on the MCSO Website in a manner which would reasonably be understood by those who view it in a way which defames and ridicules Plaintiffs.

102.    As a proximate result of the above-described improper publications, Plaintiffs have suffered an intentional breach of their personal data, subjecting them to an increased risk of identity theft and fraud.  Plaintiffs have also suffered loss of their reputation, shame, ridicule and mortification, and they have been damaged in an amount to be proven at trial.

103.    As a further proximate result of the above-described improper publications, Plaintiffs allege they have suffered special damages for injury to their reputation and/or

their business, trade, profession, or occupation, in amount no less than $10,000.00 per claimant.

104.    The mugshots and other personal and confidential information of Plaintiffs were published by Sheriff Penzone with malice and/or oppression and in reckless disregard of Plaintiffs' rights of privacy recognized under Arizona law.

105.    Upon information and belief, Defendants' publication of such mugshots is designed by Sheriff Penzone to humiliate, punish and harm those persons arrested and booked in the MCSO jail system and to enhance and further the reputation of Sheriff Penzone and the County at the expense of such arrestees, without regard to due process of the persons negatively affected thereby.

106.    Upon information and belief, the above-described publications were published by Sheriff Penzone with malice and/or oppression, and thus Plaintiffs are entitled to an award of punitive damages against Sheriff Penzone, to punish him for such wrongdoing and to prevent him and others from acting in a similar manner in the future.

107.    The privacy rights relating to a person's criminal record have been recognized by the United States Supreme Court in *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 770, 109 S.Ct. 1468, 1480 (1989), a case relied upon by the Arizona Supreme Court in *Scottsdale Unified School* where the state court concluded the release of birthdates would violate Arizona's public records laws.  In *Reporters Comm.*, the Court held the government's disclosure to a third party of the contents of an FBI "rap sheet" "*could reasonably be expected to constitute an unwarranted invasion of personal privacy*" within the meaning of Exemption 7(C) of the FOIA.

-27-

108.    At all times relevant in this matter, the privacy rights associated with one's booking photograph have been recognized by three federal circuit courts (the 6th, 10th and 11th Circuits) that in separate FOIA cases have held that an accused has a non-trivial privacy interest in their booking photographs, and the government's release of mugshot photographs to the public would result in the unwarranted invasion of that individual's personal privacy.

109.    Similar to Arizona's public records laws, the  purpose of the FOIA is to ensure government transparency and to promote government accountability in an open society.

110.    In *Karantsalis v. U.S. Department of Justice*, 635 F.3d 497, 503 (11th Cir. 2011), the Eleventh Circuit held an accused has "a continuing personal privacy interest in preventing public dissemination of his booking photographs" in part because "a booking photograph does more than suggest guilt; it raises a unique privacy interest because it captures an embarrassing moment that is not normally exposed to the public eye."

111.    In *World Publishing Co. v. U.S. Department of Justice*, 672 F.3d 825, 827-28 (10th Cir. 2012), the Tenth Circuit held that detainees possess a recognized privacy interest in booking photographs in part because "mugshots in general are notorious for their visual association of the person with criminal activity," "disclose unflattering facial expressions," and carry with them "a stigmatizing effect [that] can last well beyond the actual criminal proceedings."

112.    In *Detroit Free Press, Inc. v. United States Dep't of Justice*, 829 F.3d 478, 482 (6th Cir. 2016), *cert. denied*, 137 S.Ct. 2158 (2017) ("*Detroit Free Press II*") the Sixth

Circuit overruled its prior twenty-year-old precedent by upholding the Department of Justice's FOIA policy categorizing booking photographs as "confidential" on the basis that individuals have "a non-trivial privacy interest in booking photos" in part because such photographs "fit squarely within th[e] realm of embarrassing and humiliating information" and "convey guilt to the viewer."

113.    In *Detroit Free Press II,* Judge Cole wrote a concurring opinion in which he emphasized "*Mugshots now present an acute problem in the digital age: these images preserve the indignity of a deprivation of liberty, often at the (literal) expense of the most vulnerable among us*":

> **I agree with the majority that criminal defendants have a non-trivial privacy interest in their booking photographs**. And I agree that the time has come to overrule our decades-old decision in *Detroit Free Press, Inc. v. Dep't of Justice* (*Free Press I*), 73 F.3d 93 (6th Cir. 1996). I write separately only to emphasize two points touched upon by the majority.
>
> *First*, Exemption 7(C) of the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(C), plainly extends to a private individual's desire to avoid disclosure of personal details that may be humiliating, embarrassing, or painful. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 166–67, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 770, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). **Mugshots fit the bill**.
>
> Twenty years ago, we thought that the disclosure of booking photographs, in ongoing criminal proceedings, would do no harm. But time has taught us otherwise. The internet and social media have worked unpredictable changes in the way photographs are stored and shared. Photographs no longer have a shelf life, and they can be instantaneously disseminated for malevolent purposes. **Mugshots now present an acute problem in the digital age: these images preserve the indignity of a deprivation of liberty, often at the (literal)**

> expense of the most vulnerable among us. **Look no further than the online mugshot-extortion business.** In my view, *Free Press I* —though standing on solid ground at the time— has become "inconsistent with the sense of justice." *See* B. Cardozo, The Nature of the Judicial Process 150 (1921). **These evolving circumstances permit the court to change course.** (Emphasis added).

*Detroit Free Press II*, 829 F.3d at 485-86 (concurring opinion).

114.    As stated by the Arizona Supreme Court, the federal FOIA cases are to be used by the Arizona courts as guidance in interpreting <u>Arizona's</u> public records law. *Scottsdale Unified School*, 191 Ariz. at 302.

115.    Therefore, in addition to the wrongful disclosure by Sheriff Penzone of Plaintiffs' birthdates, Plaintiffs have a recognized state law privacy interest in preventing Sheriff Penzone from publishing their mugshot photographs on the internet, and other personal and confidential information.

116.    Prior to these three circuit court decisions, the federal agency responsible for responding to FOIA disclosure requests adopted a nondisclosure policy with respect to the release of mugshots or booking photographs to the public or the media, with a limited exception "for law enforcement purposes."

117.    Specifically, on or about December 12, 2012, the United States Department of Justice issued a Memorandum stating that the disclosure of mugshots or booking photographs to the public constitutes an unwarranted invasion of privacy: "*Once a prisoner has been arrested, the general rule is that no release should be made because release of photographs of that prisoner to the media or public would not serve law enforcement purposes.*" The Memorandum further states, "*The USMS has consistently taken the*

*position that booking photographs implicate personal privacy and should not be released under the FOIA unless a countervailing public interest is involved, i.e., the photographs somehow demonstrate something significant about the operations or activities of the government,"* citing 5 U.S.C. § 552(b)(7)(C).  See U.S. Department of Justice, U.S. Marshals Service, Office of General Counsel, Booking Photograph Disclosure Policy (December 12, 2012), https://www.usmarshals.gov/foia/policy/booking_photos.pdf.

118.    At all material times, established Arizona law provides that false light invasion of privacy "protects against the conduct of knowingly or recklessly publishing false information or innuendo that a 'reasonable person' would find 'highly offensive.'" *Godbehere v Phoenix Newspapers, Inc.*, 162 Ariz. 335, 340 (1989).

119.    Plaintiffs further claim a false light invasion of privacy action even where Sheriff Penzone's publication is not necessarily defamatory, and even though the actual facts on the Mugshot Lookup page may be deemed truthful in some instances.

120.    Upon information and belief, in each instance, Sheriff Penzone made no attempts to determine the actual guilt of Plaintiffs before digitally publishing their mugshots and personal and confidential information next to the words "Crime Type**.**"

121.    Thus, Sheriff Penzone digitally publishes such personal and confidential information with knowledge of the potential falsity and with reckless disregard for the truth of such publication.

//

//

//

**COUNT TWO**
**(VIOLATION OF ARTICLE II § 8**
**OF THE ARIZONA CONSTITUTION)**

122.    Article II, § 8 of the Arizona Constitution provides: "*No person shall be disturbed in his private affairs, or his home invaded, without authority of law.*"

123.    By virtue of Sheriff Penzone's' wrongful conduct described above, Sheriff Penzone and Maricopa County, acting under color of law and in concert with one another, have violated rights guaranteed to Plaintiffs and other similarly situated individuals under Article II, § 8 of the Arizona Constitution.

124.    Sheriff Penzone's publication of Plaintiffs' mugshots and personal and confidential information violates Plaintiffs' right to privacy, as such information was shared in such a manner that violated the reasonable expectations of Plaintiffs with respect to their privacy.

125.    Upon information and belief, Sheriff Penzone obtained personal and identifying information of Plaintiffs from the Arizona Department of Motor Vehicles, and then published that information without redaction on his "Mugshot Lookup" webpage.

126.    Sheriff Penzone was entrusted with such personal and confidential information, and abused his authority by publishing such information on his website.

127.    Sheriff Penzone's actions have caused and will continue to cause Plaintiffs to suffer harm and public humiliation and be subjected to unlawful discrimination unless these actions are stopped.

128.    As a direct proximate result of Defendants' wrongful conduct, Plaintiffs have suffered and will continue to be at risk for damage to their reputation, risk of identity fraud

and crime, and have suffered and will continue to suffer significant and substantial emotional distress and public humiliation.

## COUNT THREE
### (VIOLATION OF ARIZONA LAW: INFLICTION OF EMOTIONAL DISTRESS - NEGLIGENT, RECKLESS, AND INTENTIONAL)

129.    The acts and/or omissions of Defendants Sheriff Penzone and the County constitute extreme and outrageous conduct that has inflicted and continues to inflict emotional distress and/or harm upon Plaintiffs.

130.    The acts and/or omissions of Defendants Sheriff Penzone and the County were extreme, outrageous, and beyond all possible realms of decency and should shock the conscience of the Court.

131.    Upon information and belief, the acts and/or omissions of Defendants Sheriff Penzone and the County were intentionally aimed at causing Plaintiffs emotional distress and/or were made in reckless disregard of the near certainty that emotional distress would result from the wrongful publication of the Plaintiffs' mugshots and other personal and confidential information on the MCSO Website.

132.    The acts and/or omissions of Defendants Sheriff Penzone and the County constitute negligent, reckless, and/or intentional infliction of emotional distress upon each of the Plaintiffs.

133.    Defendants' publication of mugshots for such an improper purpose is outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.

134.    Defendants' actions here go way beyond "mere insults and indignities." Here, Defendants Sheriff Penzone and the County acted in an arbitrary manner that harmed or destroyed the personal and business reputation of persons who are presumed innocent, for absolutely no valid reason and without advancing any legitimate state interest or law enforcement purpose.

135.    As a direct and proximate cause of Sheriff Penzone and the County's intentional, reckless, and/or negligent infliction of emotional distress, Plaintiffs have suffered emotional distress, in an amount to be determined at trial.

136.    The acts and omissions of Defendants Maricopa County and Sheriff Penzone, acting in his individual capacity and under color of law, were malicious, punitive, and in reckless disregard of Plaintiffs' rights.

137.    As a result, punitive damages in an amount to be determined by a jury should be awarded against Sheriff Penzone to punish him for wrongdoing and to prevent him and others from acting in a similar manner in the future.

**COUNT FOUR**
**(VIOLATION OF ARIZONA LAW:**
**ARIZONA MUGSHOT ACT, A.R.S. § 44-7901, *et seq.*)**

138.    As explained above, Sheriff Penzone's digital publication of Plaintiffs' mugshots and criminal justice records (including Plaintiffs' birthdate and other identifying information) violated Plaintiffs' rights to privacy recognized under Arizona's public records laws, the Arizona Constitution, and Sheriff Penzone's own published Policy and Procedures (Policy GF-3).

139.     Such wrongful acts have caused damages to Plaintiffs in an amount to be proved at trial.

140.     Through the evening of April 4, 2022 or the early morning of the following day, Sheriff Penzone allowed the MCSO Website to display targeted Google AdSense affiliate advertisements that appeared when a website visitor performed a word search on the website.  Upon information and belief, Defendants have used the MCSO Website to generate advertising revenue with the Google AdSense ads.

141.     At least some of those Google AdSense ads directed website visitors to background check and reputation management service providers that are advertising affiliates of certain mugshot website companies that operate in violation of Arizona law.

142.     Upon information and belief, Sheriff Penzone's digital publication of Plaintiffs' mugshots and criminal justice records (including Plaintiffs' birthdates and other identifying information) was made in violation of the Arizona Mugshot Act, A.R.S. § 44-7901, *et seq.* (the "Mugshot Act").

143.     Upon information and belief, at all times until the evening of April 4, 2022, or the early morning of April 5, 2022, Sheriff Penzone was a person who acted as a "mugshot website operator" as defined under the Arizona Mugshot Act, and was in violation of the Arizona Mugshot Act by publishing criminal justice records for a commercial purpose.

//

//

//

**COUNT FIVE**
**VIOLATION OF DUE PROCESS**
**(THROUGH THE FOURTEENTH AMENDMENT)**
**(42 U.S.C. § 1983 - PEACE OFFICER LIABILITY)**
**AND ARTICLE II, SECTION 4 OF THE ARIZONA CONSTITUTION**

144.    The Civil Rights Act, codified at 42 U.S.C. § 1983, provides as follows:

> *Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .*

145.    The Due Process Clause of the Fourteenth Amendment prohibits the government (including Defendants) from depriving individuals of "life, liberty, or property" without due process of law.

146.    Liberty interests protected by the Fourteenth Amendment include interests that are created by state law.

147.    For the reasons explained in this Complaint, Sheriff Penzone and the County, jointly and severally, deprived Plaintiffs of their constitutional rights, including those rights, privileges and immunities secured by the United States Constitution as incorporated and applied to the states through the Fourteenth Amendment.

148.    Specifically, the wrongful conduct of Defendants constitutes violations of Plaintiffs' rights under the United States Constitution, including but not limited to the Fourth, Fifth, Sixth and Fourteenth Amendments, in that Plaintiffs were deprived of the privileges and immunities guaranteed to all citizens of the United States, and without

proper cause or with an unconstitutional motive and malice, and without due process of law or equal protection.

149.    At all times material, Sheriff Penzone was acting under color of law and in his capacity as an official and agent of Maricopa County, and Sheriff Penzone was, upon information and belief, the final policy-maker and/or decision-maker for the County with respect to the publishing of mugshots and personal and confidential information on the MCSO Website.

150.    Defendants' wrongful conduct described above gives rise to claims against Defendants under state and federal laws including but not limited to constitutional violations and based on 42 U.S.C. §1983 and other due process rights, including the Arizona Constitution.

151.    Defendants' actions, including the improper use by Sheriff Penzone of private and confidential records of Plaintiffs obtained from the Arizona Department of Motor Vehicles, or from other sources, violate Plaintiffs' right to freedom from unreasonable seizure as protected by the Fourth Amendment of the United States Constitution and Plaintiffs' right to equal protection of the law as protected by the Fourteenth Amendment to the Constitution. These claims include denial of due process and violations of state law claims including infliction of emotional distress (intentional and negligent), and false light invasion of privacy.

152.    Sheriff Penzone was either aware or should have known that the publications on the Mugshot Lookup page on the MCSO Website conveys a message of guilt to the public, and acts as a punishment against persons who are presumed innocent under the law.

153. In many instances, the mugshots and corresponding personal and confidential information concerning Plaintiffs were picked-up (or "scraped") by unscrupulous websites that digitally published their mugshots along with their name and date of birth on the internet, all of which had been previously digitally published by Sheriff Penzone on the MCSO Website without any due process.

154. Abuse of these mugshots and corresponding personal and confidential information by profiteers such as mugshot website operators also cuts against efforts for criminal justice reform and rehabilitation of those who have made mistakes in their pasts. Moreover, in many cases arrestees are never charged, are adjudicated not guilty, or their charges are dismissed for various reasons, including through diversion programs.

155. Mugshot website operators have wide-sweeping negative effects on not only those directly impacted but on the community as a whole. *See* Gary Fields & John R. Emshwiller, *America Busted: As Arrest Records Mount, Consequences Last a Lifetime*, WALL ST. J., Aug. 19, 2014, at A1. These predatory mugshot websites only exist because of the reckless and wanton actions of law enforcement decision-makers, including Sheriff Penzone and the County, in digitally publishing this personal and confidential information on their official websites. It is the public policy of the State of Arizona, as made clear by the Arizona Mugshot Act, that arrest information and arrest photos not be used in a manner that causes the public harm.

156. Sheriff Penzone's digital publication of Plaintiffs' mugshots and personal and confidential information on the MCSO Website does not advance any legitimate state interest or law enforcement purpose.

157.   Upon information and belief, Sheriff Penzone's publication of such mugshots was motivated by the desire of Sheriff Penzone to promote his office and the County at the expense of Plaintiffs, and/or to harm and punish the arrestees prior to any conviction.  In either case, the publication of such information by Sheriff Penzone does not advance a legitimate, nonpunitive governmental objective.

158.   For the reasons stated in this Complaint, both Sheriff Penzone and the County are jointly responsible for the digital publication of the mugshots and other personal and confidential information which appear on the MCSO Website.

159.   Upon information and belief, Defendants published the mugshots and other personal and confidential information at the expense of those persons arrested, for the improper purpose to promote its organization and/or to punish those persons who are arrested without the necessity of proving probable cause and without the necessity of allowing such Plaintiffs the opportunity to prove their innocence before being punished.

160.   Upon information and belief, Plaintiffs have suffered and continue to suffer from damages to their data privacy and personal and business reputation caused by the Sheriff's wrongful publication of the mugshots and other personal and confidential information on the internet.

161.   As a direct result of the wrongful acts of Sheriff Penzone and Maricopa County, Plaintiffs' constitutional rights have been violated and they have and continue to suffer personal injuries, including emotional distress and pain and suffering, loss of earning capacity and damage to their personal and business reputation.

162.    At all material times, Sheriff Penzone was acting in the course and scope of his duties as the Sheriff for Maricopa County at the time of the publication of Plaintiffs' mugshots and other personal and confidential information on the MCSO Website.

163.    Sheriff Penzone's publication on the internet of Plaintiffs' mugshots and personal and confidential information was unwarranted under the circumstances and was objectively unreasonable when comparing or balancing the interests of the State.

164.    Therefore, by using subjectively and objectively unreasonable methods while acting under color of state law, Sheriff Penzone and the County violated Plaintiffs' rights under the United States Constitution.

165.    In addition, upon information and belief, Sheriff Penzone and the County are also liable under 42 U.S.C. § 1983 for failing to supervise and train the staff and officers of the County who assisted in the improper publication of Plaintiffs' personal and confidential information on the MCSO Website, in violation of state law and Sheriff Penzone's own published policy.

166.    Upon information and belief, at all times material, Sheriff Penzone and the County had a general policy, pattern and/or practice of not properly supervising or disciplining officers and staff for their conduct, thereby sanctioning such actions, which amounted to a departmental policy of overlooking constitutional violations and violations of the Sheriff's own published policy.  Upon information and belief, the failure of Sheriff Penzone and the County to supervise and train its staff, and their willful ignorance towards the violations caused by the publication of Plaintiffs' mugshots and personal and

confidential information, constitutes gross negligence and/or deliberate and conscious indifference to the rights of Plaintiffs.

167.    Upon information and belief, the violations described above include supervising the staff and employees who manage and operate the mugshot portion of the MCSO Website, including but not limited to the publishing of mugshots and personal and confidential information (including birthdates) with no due process, the use of the term "Mugshot," the use of the term "Crime Type," the lack of placing any disclaimer on the Mugshot Lookup webpage (i.e., stating that arrestees are innocent until proven guilty, or words to that effect) and publishing birthdates and other identifying information in violation of the Sheriff's own published policy.

168.    Counties may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the county.

169.    Upon information and belief, Sheriff Penzone is the final policy-maker for Maricopa County with respect to all matters relating to the publishing of mugshots and personal and confidential information on the MCSO Website, including but not limited to the decision whether or not such information will be made available to the general public through the internet.

170.    Upon information and belief, at all times material Sheriff Penzone and the County were acting pursuant to an official County policy, practice, custom and procedure authorizing the digital publication of Plaintiffs' mugshots and personal and confidential information on the internet.

171.    Upon information and belief, even if the County's practices of overlooking constitutional torts and violations of Arizona law were not authorized by an officially adopted policy, the practice is so common and well-settled that it fairly represents the official policy of Maricopa County, with Sheriff Penzone being the final policy-maker for the County.

172.    Consequently, Sheriff Penzone and the County are liable for the harm caused to Plaintiffs as a result of their unlawful and unconstitutional policies, practices, customs and procedures.

173.    Punitive damages in an amount to be determined by a jury should be awarded against Sheriff Penzone to punish him for wrongdoing and to prevent him and others from acting in a similar manner in the future.

174.    When Sheriff Penzone violated clearly-established Arizona law concerning the disclosure of personal and confidential information such as birthdates, such an underlying violation supports a constitutional claim under § 1983 when coupled with Sheriff Penzone's complete lack of due process in digitally publishing such personal and confidential information on the internet to the public.

175.    Under the due process clause in the Fifth Amendment of the United States Constitution, "No person shall…be deprived of life, liberty or property, without due process of law…"

176.    The federal due process clause is mirrored in the Fourteenth Amendment, which guarantees due process of law in *state* criminal prosecutions.

177.    Arizona has a similar due process provision in its state constitution (Article II, Section 4) that provides: "*No person shall be deprived of life, liberty, or property without due process of law.*"

178.    The U.S. Supreme Court has long recognized all persons are presumed innocent until proven guilty, and are entitled to due process under the law:

> "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States,* 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481 (1895). Our society's belief, reinforced over the centuries, that all are innocent until the state has proved them to be guilty, like the companion principle that guilt must be proved beyond a reasonable doubt, is "implicit in the concept of ordered liberty," *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937), and is established beyond legislative contravention in the Due Process Clause. (citations omitted)
>
> The Due Process Clause of the Fifth Amendment provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law. . . ." This Court has held that the Due Process Clause protects individuals against two types of government action. So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952), or interferes with rights "implicit in the concept of ordered liberty," *Palko v. Connecticut,* 302 U.S. 319, 325-326, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). This requirement has traditionally been referred to as "procedural" due process.

*U.S. v. Solerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 2102 (1987).

179.    "[T]he touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).

180.    A procedural due process claim is rooted in ". . . the fundamental requirement that an individual be given the opportunity to be heard in a meaningful way." *Loudermill v. Cleveland Bd. of Ed,* 721 F.2d 550, 563 (1983) aff'd 470 U.S. 532 (1985).

181.    Here, the actions of Maricopa County and Sheriff Penzone were arbitrary and without reasonable justification in the service of a legitimate governmental objective.

182.    Here, Maricopa County and Sheriff Penzone failed to afford Plaintiffs with any opportunity to be heard before Sheriff Penzone digitally published Plaintiffs' mugshot and other personal and confidential information on the internet, and violated their state law privacy rights.

183.    Defendants' failure to provide due process to Plaintiffs is intentional.  In defending the publication of such personal and confidential information, in a certain prior lawsuit, Defendants have taken the position that: "*There is no right to due process in providing that which by law, is public record*."  In that same lawsuit, Defendants have stated that an arrestee is not *"owed due process in the release of that which is considered a public record*."

//

//

-44-

184.    A liberty interest may be implicated where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him or her.  Here, Sheriff Penzone's abuse of authority has harmed Plaintiffs' good name, reputation, honor, or integrity.

185.    The Ninth Circuit has held procedural due process protections apply to reputational harm where "a plaintiff suffers stigma from governmental action plus alteration or extinguishment of 'a right or status previously recognized by state law." *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1185 (9th Cir. 2008).

186.    Sheriff Penzone improperly published Plaintiffs' personal and confidential information on the internet, including their birthdate, without regard to due process and in abuse of his authority.  Plaintiffs' rights of privacy recognized under Arizona law is a right or status previously recognized by state law that was distinctly altered or extinguished by the actions of Defendants.

187.    At all times material, Plaintiffs were entitled to substantive due process to protect themselves from an unreasonable loss of substantive rights, such as the right to privacy recognized under state law.

188.    Generally, procedural due process protects individuals from being criminally punished without notice and an opportunity to be heard.  Here, Defendants violated Plaintiffs' procedural due process rights by punishing Plaintiffs through the MCSO Website.

189.    In addition, Plaintiffs have a valid cause of action against Defendants for both substantive due process and procedural due process because Defendants "acted with

-45-

an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles,* 250 F.3d 668, 687 (9th Cir. 2001).

190.    Defendants' practice of digitally publishing Plaintiffs' booking photograph, criminal justice record, and other personal, confidential and identifying information (including their name, birthdate, weight, height, hair color and eye color) on the MCSO Website violates Plaintiffs' federally protected liberty interest.

191.    Through their practice of digitally publishing Plaintiffs' booking photograph, criminal justice record, and other personal, confidential and identifying information (including their name, birthdate, weight, height, hair color and eye color) on the MCSO Website, Defendants have caused and will continue to cause the violation of Plaintiffs' Fourteenth Amendment rights.

192.    Through Defendants' continued practice of improperly publishing booking photographs and other personal and confidential information, Defendants have caused and will continue to cause irreparable harm to the putative Class members who have or will have such information published on the MCSO Website.

193.    The Class is entitled to injunctive relief to prohibit Defendants from continuing to publish such mugshots and other personal and confidential information on the MCSO Website, or otherwise from publishing such information on the internet.

//

//

//

//

**COUNT SIX**
**EQUAL PROTECTION**
**(THROUGH THE FOURTEENTH AMENDMENT)**
**(42 U.S.C. § 1983 - PEACE OFFICER LIABILITY)**

194.    The Equal Protection Clause of the U.S. Constitution requires the State to treat all similarly situated people equally, and this right extends to detainees such as Plaintiffs.

195.    At all times material, Sheriff Penzone was acting under color of law and in his capacity as an official and agent of Maricopa County.

196.    Sheriff Penzone was, upon information and belief, the final policy-maker for the County with respect to the publishing of mugshots and personal and confidential information on the MCSO Website, including the digital publishing of personal and confidential information of persons who under the law, are presumed innocent until proven guilty.

197.    The wrongful conduct of Sheriff Penzone and the County described above in this Complaint constitutes violations of the United States Constitution, in that Plaintiffs were deprived of the privileges and immunities guaranteed to all citizens of the United States, had their state privacy rights violated by Sheriff Penzone with an unconstitutional motive, which was performed with malice by Sheriff Penzone and the County, and without due process or equal protection under the law.

198.    Sheriff Penzone and the County engaged in wrongful conduct for an impermissible motive and with malice due to the fact that Sheriff Penzone, acting as the policy-maker for the County, caused to be published on the MCSO Website Plaintiffs'

booking photographs along with personal and confidential information of Plaintiffs including their birthdates in violation of Arizona law and the Sheriff's own policy.

199.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs' constitutional rights were violated, and they have suffered harm as a direct result.

200.    The wrongful conduct of Sheriff Penzone and the County were undertaken with either malice and/or with improper and unconstitutional motives in which they intentionally discriminated against Plaintiffs on the basis of Plaintiffs' inclusion in the class of persons who are booked in the Maricopa County jail system.

201.    Plaintiffs were wrongfully subjected to Defendants' improper abuse of authority and power for Defendants' improper motives, all without due process.

202.    Such discrimination has had, and continues to have, a disparate impact of a protected class including race, national origin, and poverty.

203.    In its totality, Defendants' entire course of conduct against Plaintiffs, as set forth in this Complaint, was arbitrary, irrational, extreme, outrageous, unjustified by any governmental interest, and beyond all possible realms of decency.

204.    Defendants' conduct also shocks the conscience of the Court and constitutes a gross abuse of governmental authority.  There was and is no legitimate state interest for Sheriff Penzone to publish the mugshots and personal and confidential information of Plaintiffs on the MCSO Website.

205.    Upon information and belief, a disparity in treatment was not reasonably related to any legitimate penological interests.

206. Upon information and belief, the disparate treatment by Defendants was intentionally directed at Plaintiffs, and was not an accident or a random act.

207. The acts and omissions of Sheriff Penzone, acting in his individual capacity and under color of law, were malicious, punitive, and in reckless disregard of Plaintiffs' rights.

208. As a result, punitive damages in an amount to be determined by a jury should be awarded against Sheriff Penzone to punish him for his wrongdoing and to prevent him and others from acting in a similar manner in the future.

209. More specifically, Plaintiffs' rights of equal protection were violated because Sheriff Penzone intentionally treated arrestees booked in his jail differently from other similarly situated individuals, by digitally publishing Plaintiffs' personal and confidential information on the internet, without a rational basis for the difference in treatment.

210. This disparate treatment was intentionally directed only at the persons who are booked by Sheriff Penzone in the Maricopa County jail system, as opposed to being an accident or a random act on the part of Sheriff Penzone. Upon information and belief, neither Sheriff Penzone nor the County digitally publishes the birthdates of any other class of persons, other than the arrestees booked by Sheriff Penzone in his jail system.

211. Defendants' disparity in treatment of Plaintiffs, by publishing Plaintiffs' personal and confidential information on the internet, was not reasonably related to any legitimate penological interests, or any other legitimate state interest.

212. Plaintiffs are members of a class of persons booked by Sheriff Penzone in the Maricopa County jail system, who have suffered from the improper disclosure of their

booking photograph and other personal and confidential information on the internet, including their birthdate.

## COUNT SEVEN
## RIGHTS UNDER THE SIXTH AMENDMENT
## (THROUGH THE FOURTEENTH AMENDMENT)
## (42 U.S.C. § 1983 - PEACE OFFICER LIABILITY)

213. The Sixth Amendment of the United States Constitution provides in pertinent part: "*In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . .*"

214. When Sheriff Penzone unilaterally labeled each of the Plaintiffs as a criminal without due process in his internet publication, the Sheriff violated the Plaintiffs' rights to a speedy trial and other protections under the Sixth Amendment.

215. Likewise, Sheriff Penzone's actions were in contravention to the "innocent until proven guilty" presumption that has been long been recognized by the United States Supreme Court.

216. The U.S. Supreme Court has recognized that the right of an accused to be free from undo public accusation *is a constitutional right*.

217. In *U.S. v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497 (1982), the U.S. Supreme Court recognized that one of the reasons an accused has the right to a speedy trial under the Constitution is to minimize the impairment of liberty including the subjection to "public obloquy" that an accused suffers from while criminal charges remain unresolved:

> **Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, <u>subject him to public</u>**

**obloquy, and create anxiety in him, his family and his friends**."

\*\*\*

The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. **The speedy trial guarantee is designed** to minimize the possibility of lengthy incarceration prior to trial, **to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.** (Emphasis added).

*U. S. v. MacDonald*, 456 U.S. at 8.

218.    Justice Brennan argued in his dissent in *Paul v. Davis*, 424 U.S. 693 (1976) that the unconstitutionality of the police's activities in stigmatizing a person with the label of being a criminal was performed "without the salutary *and constitutionally mandated safeguards of a criminal trial*:"

The Court today holds that police officials, acting in their official capacities as law enforcers, may on their own initiative and without trial constitutionally condemn innocent individuals as criminals and thereby brand them with one of the most stigmatizing and debilitating labels in our society. **If there are no constitutional restraints on such oppressive behavior, the safeguards constitutionally accorded an accused in a criminal trial are rendered a sham, and no individual can feel secure that he will not be arbitrarily singled out for similar Ex parte punishment by those primarily charged with fair enforcement of the law**. The Court accomplishes this result by excluding a person's interest in his good name and reputation from all constitutional protection, regardless of the character of or necessity for the government's actions. The result, which is demonstrably inconsistent with our prior case law and unduly restrictive in its construction of our precious Bill of Rights, is one in which I cannot concur.

\*\*\*

> **The stark fact is that the police here have officially imposed on respondent the stigmatizing label "criminal" without the salutary and constitutionally mandated safeguards of a criminal trial**. The Court concedes that this action will have deleterious consequences for respondent. For 15 years, the police had prepared and circulated similar lists, not with respect to shoplifting alone, but also for other offenses. App., 19, 27-28. Included in the five-page list in which respondent's name and "mugshot" appeared were numerous individuals who, like respondent, were never convicted of any criminal activity and whose only "offense" was having once been arrested. (Emphasis added).

*Paul v. Davis*, 456 U.S. at 8, 102 S.Ct. at 1502 (dissenting opinion).

219.    A decade after *Paul v. Davis*, the U.S. Supreme Court recognized that one of the guarantees under the Sixth Amendment was "to minimize anxiety and concern *accompanying public accusation . . .*"

> As we have recognized, **the Sixth Amendment's guarantee of a speedy trial** "is an important safeguard to prevent undue and oppressive incarceration prior to trial, **to minimize anxiety and concern <u>accompanying public accusation</u>** and to limit the possibilities that long delay will impair the ability of an accused to defend himself." (Emphasis added).

*U.S. v. Loud Hawk*, 474 U.S. 302, 312-313, 106 S. Ct. 648 (1986).

220.    Sheriff Penzone's digital publication of Plaintiffs' mugshots and personal and confidential information on the internet, without any trial or hearing on the merits, effectively *maximizes* an accused's anxiety accompanying public accusation, in violation of the Sixth Amendment.

221.    Sheriff Penzone's digital publication of Plaintiffs' mugshots and personal and confidential information on the internet, which was performed without any trial or

hearing on the merits, constitutes a form of punishment in violation of the Sixth Amendment.

222.    Under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. *Bell v. Wolfish*, 441 U.S. 520, 535-539 (1979).

223.    Upon information and belief, Sheriff Penzone intended to punish Plaintiffs by publishing their mugshots and personal and confidential information on the MCSO Website.

224.    There is no legitimate nonpunitive governmental objective in Sheriff Penzone's publication of such mugshots and other personal and confidential information on the MCSO Website.

225.    Retribution and deterrence are not legitimate nonpunitive governmental objectives. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168 (1963).

226.    Upon information and belief, the intent of Sheriff Penzone in publishing mugshots of arrestees on the MCSO Website (including those of Plaintiffs) is to punish those arrestees.

227.    In fact, Sheriff Penzone's publication on the MCSO Website does punish such arrestees, who were afforded no due process of law prior to Sheriff Penzone's publication.

//

//

//

**PLAINTIFFS' DAMAGES**

228.    Sheriff Penzone is not entitled to qualified immunity for his actions alleged in this action because at all times relevant the law was sufficiently clear that a reasonable official would understand that the digital publication of Plaintiffs' mugshots and personal and confidential information violated Arizona law, and performed with a complete lack of due process, violated Plaintiff's constitutional rights. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

229.    A municipality may be liable under § 1983, where a party shows that a policy or custom led to the plaintiff's injury, and that the policy or custom reflects deliberate indifference to the constitutional rights of its inhabitants. Here, the County's policy or custom concerning the publication of mugshots led to Plaintiffs' injuries and reflects deliberate indifference to the constitutional rights of Plaintiffs.

230.    Sheriff Penzone, individually as well as in his official capacity, is liable to Plaintiffs pursuant to 42 U.S.C. § 1983 and is also liable for punitive damages.

231.    As a direct result of Sheriff Penzone and the County's wrongful acts, Plaintiffs have suffered damages in an amount to be proven at trial, including special damages which are alleged to be no less than $10,000.00 per claimant.

232.    Plaintiffs have suffered and will continue to suffer other damages to be proven in court, including pain and suffering, emotional distress and damage to their reputation and breach of their data privacy.

//

//

1

## PUNITIVE DAMAGES

233.    For the reasons stated above in this Complaint, punitive damages to be determined by the jury should be awarded against Sheriff Penzone to punish him for his wrongful acts and to deter him and others from similar acts in the future.  In addition, to the extent this Court finds that Maricopa County was operating the MCSO Website as a commercial enterprise, punitive damages should be awarded against the County.

## REQUEST FOR ATTORNEY'S FEES

234.    Plaintiffs are entitled to recover their attorney's fees and costs as required by the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, and for the bad faith of the Defendants.  Plaintiffs request that the Court and/or the jury award their attorney's fees and costs and expenses against Defendants.

## DEMAND FOR JURY TRIAL

235.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief against Defendants Maricopa County and Sheriff Paul Penzone, jointly and severally, as follows:

A.    Certify this action as a class action and appoint Brian Houston as the Class representative and the undersigned counsel as the Class counsel;

B.    Issue a judgment declaring that Defendants' practice of digitally publishing Plaintiffs' booking photograph (referred to by Sheriff Penzone on the subject MCSO

Website as a "mugshot"), criminal justice record, and other personal, confidential and identifying information (including their name, birthdate, weight, height, hair color and eye color) on the official MCSO Website violates Arizona law and the Fourteenth Amendment, among other things;

C.    Issue a permanent injunction prohibiting Defendants' practice of digitally publishing Plaintiffs' booking photograph (referred to by Sheriff Penzone on the MCSO Website as a "mugshot"), criminal justice record, and other personal, confidential and identifying information (including their name, birthdate, weight, height, hair color and eye color) on the MCSO Website;

D.    Judgment for compensatory damages and general damages in an amount to be proven at trial including damages for pain and suffering, mental anguish and emotional distress;

E.    Judgment for special damages to Plaintiffs' reputation in an amount to be proven at trial, but which is alleged herein to be no less than $10,000.00 per claimant;

F.    Statutory penalties under Arizona's Mugshot Act against Sheriff Penzone;

G.    An award of Plaintiffs' costs and expenses incurred herein, including reasonable attorneys' fees and costs pursuant to pursuant to 28 U.S.C. § 2412, 42 U.S.C. § 1988, and other applicable law;

H.    Judgment for punitive damages in an amount to be determined by the Court; and

I.    Such other and further relief as the Court deems just and proper.

-56-

**DATED** this 23rd day of May 2022.

ANDREW IVCHENKO, PLLC

By:  /s/ Andrew Ivchenko
      Andrew Ivchenko
      4960 South Gilbert Road, #1-226
      Chandler, Arizona 85249

KOZUB KLOBERDANZ

By:  /s/ Daniel L. Kloberdanz
      Daniel L. Kloberdanz
      7537 East McDonald Drive
      Scottsdale, Arizona 85250
      *Attorneys for Plaintiffs Brian Houston and Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

## Brian Houston's Notice of Claim Letter
## to Maricopa County and Sheriff Penzone
## (Redacted)

**ANDREW IVCHENKO**

ATTORNEY-AT-LAW

4960 SOUTH GILBERT RD., SUITE 1-226

CHANDLER, ARIZONA 85249

(480) 250-4514

E-mail: aivchenkopllc@gmail.com

March 22, 2022

Maricopa County
c/o Maricopa County Board of Supervisors
Clerk of the Board of Supervisors
301 W. Jefferson, 10th Floor
Phoenix, AZ 85003

Re: Notice of Claim

Dear Sir:

I hereby submit the attached Notice of Claim on behalf of my client, Brian J. Houston, in connection with the actions described in said Notice (and Supplement) by Maricopa County and Maricopa County Sheriff Paul Penzone.

This Notice concerns the wrongful digital publication of a mugshot photograph and other personal information on the official Maricopa County Sheriff website (mcsco.org), made in relation to the arrest and booking of Mr. Houston. It is our intention to file a class action complaint against you after the requisite 60-day notice period expires.

Please contact me if you have any addiotnal questions, or if you desire to settle this matter amicably.

Sincerely,

Andrew Ivchenko



## NOTICE OF CLAIM

| Date of Loss | Time of Loss | | Location of Loss | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1-28-2022 | 12:00 | ☑ AM ☐ PM | 2670 S 28th Dr., Phoenix, AZ 85009 | | | | | |

| Person or Entity Against Whom the Claim is Asserted |
|---|
| Maricopa County and Maricopa County Sheriff's Office and Sheriff Paul Penzone |

| Claimant Last Name | First Name | | Date of Birth | Social Security # | | If Minor, Give Parent/Guardian Name |
|---|---|---|---|---|---|---|
| Houston | Brian | | | | | |

| Address | | | | City | | State | Zip Code | Telephone |
|---|---|---|---|---|---|---|---|---|
| | | | | | | AZ | | |

| Description of Occurrence |
|---|
| See Supplement to Notice of Claim |
| |
| |

| Describe Damage to Property: |
|---|
| See Supplement to Notice of Claim |
| |
| |

**If Person(s) Injured, List the following information on all injured parties**

| Name | Address | Description of Injury | Date of Birth | Telephone |
|---|---|---|---|---|
| Brian J. Houston | | See Supplement | | |
| | | | | ( ) - |

| Responding Police Agency | | | | Police Report #: | |
|---|---|---|---|---|---|

**Claimant Vehicle Information**

| Make | | Model | | Year | | License Plate # |
|---|---|---|---|---|---|---|
| | | | | | | |

**County Vehicle Information**

| Unit Number | | Department | | County Driver | | License Plate # |
|---|---|---|---|---|---|---|
| | | | | | | |

**If Witnesses are available, provide the following information**

| Name | | Address | | Telephone |
|---|---|---|---|---|
| See Supplement to Notice of Claim | | | | ( ) - |
| | | | | ( ) - |

Specific amount for which your claim can be settled: $ 2,500,000

Claimant Signature: [signature]   Attorney for Brian J. Houston   Date: 3-22-2022

If you have questions about this form or your claim, it is your responsibility to seek legal advice on your own and at your expense. Please do not call or otherwise contact any employee of Maricopa County or any employee of its officers, boards or districts, to seek assistance with filing a notice of claim or seek any other assistance with respect to your claim. No officer or employee of Maricopa County is authorized to provide legal advice or assistance with the preparation or filing of your claim. If you rely on any information furnished directly or indirectly by any officer or employee of Maricopa County, you proceed at your own risk.

If your claim involves a road condition, complete the Road Condition Supplement and mail it with this form.

Notice of Claim rev. 11/20/2014

## Supplement to Notice of Claim

Maricopa County
c/o Maricopa County Board of Supervisors
Clerk of the Board of Supervisors
301 W. Jefferson, 10th Floor
Phoenix, AZ 85003

Sheriff Paul Penzone
Maricopa County Sheriff's Office
Legal Liaison Section, Compliance Division
550 West Jackson
Phoenix, AZ 85003

**Re:    Notice of Claim to Maricopa County and Sheriff Paul Penzone
Pursuant to A.R.S. §12-821.01**

Maricopa County and Maricopa County Sheriff Paul Penzone,

     This Notice of Claim is submitted on behalf of the claimant, Brian J. Houston ("Mr. Houston" or the "Claimant"), in relation to the actions described below by Maricopa County (the "County") and Maricopa County Sheriff Paul Penzone (the "Sheriff" or "Penzone"), with respect to the wrongful digital publication of a mugshot photograph and other personal information on the official Maricopa County Sheriff website (mcsco.org), made in relation to the arrest and booking of the Claimant.

     Mr. Houston was arrested by the Phoenix Police Department on January 27, 2022, and charged with assault. Based on information and belief, he was booked in the Intake, Transfer, and Release (ITR) facility located at 2670 S 28th Dr., Phoenix, AZ 85009, on that date, or in the early morning hours of January 28, 2022, at which time his booking photo was taken by the Sheriff and posted on mcsco.org for a period of about three days. (See Exhibit 1.) During this time, at least one private online mugshot website operator scraped Mr. Houston's booking photo, arrests records and personal information (including his date of birth) and published it on their website. (See Exhibit 2.) As a result, Mr. Houston's information has been memorialized on the internet for all time, which has caused and will continue to cause him significant reputational harm, including harm to his business. The groundless charges against Mr. Houston were not pursued by the City of Phoenix prosecutor's office.

     This Notice of Claim is submitted in relation to the violation by Sheriff Penzone and the County of the Claimant's privacy rights under state law described below, and the violation of certain civil rights under 42 U.S.C. §1983 and other rights under the United States Constitution. If litigation ensues, Mr. Houston, as putative class representative, also

1

intends to seek certification of a plaintiff class. *See Andrew S. Arena, Inc. v. Superior Court In and For County of Maricopa*, 788 P.2d 1174, 163 Ariz. 423 (Ariz. 1990). The plaintiff class will include the entire class of persons constituting all of those individuals who have been, and continue to be, booked in the Maricopa County jail system and who have had, or will have, their mugshot and personal information digitally published by Sheriff Penzone on the MCSO website. This class of persons includes all potential claimants who have the right to make a claim against Maricopa County and/or Sheriff Penzone within any applicable statute of limitations period.

If a class is later certified, this notice of claim will serve as a representative notice for other class members. Moreover, A.R.S. § 12-821.01(A) requires a putative class representative to include in his notice of claim a "specific amount" for which his individual claim can be settled and the facts supporting that amount. *See City of Phoenix v. Fields*, 199 P.3d 1220, 1220 (Ariz. 2009). The specific amount relating to Mr. Houston's individual claims, as well as the facts supporting each claim for damages, are outlined herein. *See Deer Valley Unified School Dist. v. Houser*, 152 P.3d 490, 214 Ariz. 293 (Ariz. 2007).

I.    **Facts sufficient to permit the County and the Sheriff to understand the basis on which liability is claimed under this Notice of Claim.**

In relation to an arrest, the Claimant's mugshots and personal information, including birthdates and other identifying information, were digitally published on the MCSO website under the "Mugshot Lookup" gallery. The wrongful publication of such information has caused damage to the Claimant's reputation in the business community, as well as damage to his personal reputation.

At all times material, the Sheriff and the County were aware, or should have been aware, that the online publishing of one's mugshot and personal information will result in permanent reputation damage, as well as subjecting an arrestee to blackmail and extortion by unscrupulous mugshot website operators and reputation management companies, among other things.

There is no justifiable or valid reason for Sheriff Penzone or the County to publish this personal information online, including the birthdates of those persons booked in the County's jail system.

Sheriff Penzone and the County use the mugshots and the personal information of arrestees for pecuniary gain and commercial purposes, as shown by the targeted ads from reputation management companies, generated from GoogleAdSense, a Google affiliate advertising program, designed for website publishers to monetize their website content. Google Ads appear on Sheriff's Penzone's website from reputation management companies when an arrestee's name is entered into the prominently displayed search field found at the top of each page of the official mcso.org website.

Mcso.org appears to be the *only* Maricopa County website using Google Ads.

The MCSO website operates to generate profits from Google AdSense advertisers. Because the criminal justice records digitally published on Sheriff Penzone's website are being used for a commercial purpose, Sheriff Penzone himself is a person who is a "mugshot website operator" in violation of Arizona's Mugshot Act, A.R.S. § 44-7901.

The publication of such personal information also violates the Sheriff's own published MCSO Policy and Procedures (GF-3), which expressly states, "*Information determined to be personal identifying information or locating information shall be redacted.*" In that same MCSO policy, "identifying information" is defined to include "*a date of birth.*"

The actions of Maricopa County in posting mugshots, without regard to any due process and without any finding of guilt on the part of any Claimant, is a violation of the Claimant's constitutional rights under the United States Constitution and the Constitution of the State of Arizona.

Nowhere does the mcsco.org website even mention the *potential* for an arrestee's (including the Claimant) innocence. Instead, the Sheriff uses the derogatory heading "**Mugshot Lookup**" and displays a rogue's gallery of photographs of persons who appear to any reasonable reader to either be guilty or at least be likely to be guilty of a crime. Next to the arrestee's mugshot photograph is the improper disclosure of their birthdate and the defamatory words "**Crime Type**".

With respect to each of the legal claims alleged by the Claimant,1 the following facts are relevant:

(1)  At all times relevant, the official MCSO website (which is accessible to the general public on the internet), contains an ongoing and rotating display of a mugshot gallery of recent arrestees (based on information and belief, each arrestee appears on the website for about three days), showing the arrestee's booking photograph (also known as a mugshot), personal information (full name, birthdate, and other personal information) and the words "Crime Type" next to a designated crime.

(2)  Since 1998, it has been well-established by this state's highest court that birthdates of individuals, albeit public records, are 'private and confidential' and should not be disclosed by the government under Arizona's public records law. *Scottsdale Unified School District No. 48 of Maricopa County v. KPNX Broadcasting Co.*, 191 Ariz. 297, 301-03 (1998) (The state's disclosure of persons' birthdates, albeit part of the "public record," violates those individuals' rights of privacy under Arizona law).

(3)  The mcso.org website contains no disclaimer or statement of presumption of innocence for any Claimant.

(4)  Not only does Sheriff Penzone's digital mugshot publication on the internet allow reputation management companies and predatory mugshot removal websites to easily scrape this information and extort persons such as the Claimant, but Sheriff Penzone uses the official MCSO website to display targeted "Google AdSense affiliate advertisements" (for a pecuniary gain), directing website visitors to background check and reputation management service providers that are advertising affiliates of mugshot website companies that are in violation of Arizona law.

---

1 As stated *infra*, this Notice of Claim applies to Mr. Houston in his individual capacity and in his capacity as a potential class representative. In the event litigation ensues and a class is certified, this Notice of Claim shall serve as representative notice for the other class members. References herein to "Claimants" include Mr. Houston.

(5)    Due to the unlawful publishing of the Claimant's mugshot photograph, full name, birthdate, height, weight, hair color and eye color by Sheriff Penzone, the Claimant's private and personal information have been scraped by a variety of predatory mugshot website operators and continues to reside on a myriad of websites, including the site Recentlybooked.com.

(6)    As of today, direct links to the Claimant's full mugshot and personal information appear at the top of search results on multiple internet search engines, including yahoo.com and bing.com.

(7)    As of today, if one enters the name of any Claimant in the search field at the top of the MSCO website, the search results that appear are advertisements for various reputation management websites, including "BeenVerified.com" and "Truthfinder.com." These advertisers are advertising affiliates of the mugshot website operators Jailbase.com and Mugshots.com, which continue to digitally publish mugshots on the internet in violation of Arizona's Mugshot Act, A.R.S. § 44-7901 *et seq*.

(8)    Sheriff Penzone's website is optimized to direct traffic toward the "**Mugshot Lookup**" gallery, which in turn, creates increased internet traffic on the website which enhances advertising revenue, at the exploitation of those persons who are booked in Penzone's jail system.

Since 1998, the law has been very clear in Arizona that under Arizona's public records laws, a person "has a privacy interest in his or her birth date." *Scottsdale Unified District*, 191 Ariz. at 302. In that case, the Arizona Supreme Court held even though the birthdates of teachers are part of the "public record," the privacy interests of individual teachers take precedence over any possible public interest favoring disclosure. The court made such a determination even though the party seeking the information claimed the birthdates were necessary to run criminal background checks on teachers in public schools. *Scottsdale Unified District*, 191 Ariz. at 302-03.

Here, the Sheriff's improper disclosure of the Claimant's **birthdate** is the catalyst for much of the resulting harm to each Claimant's online reputation. The disclosure of the birthdate accompanying such Claimant's full name provides the predatory mugshot websites the crucial commodity they need to work their extortion.

At all times after the arrest of each Claimant, including at the time the Sheriff digitally published the offending information, each Claimant was presumed innocent under the law. "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States,* 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481 (1895).

5

## II.    The basis for the Claimant's legal claims.

Sheriff Penzone digitally published the Claimant's personal information and mugshots on the MCSO website in violation of well-established Arizona law concerning public records, which law prohibits disclosure of personal or confidential information not relevant to the activities of the government, including birthdates of individuals, among other things. *Scottsdale Unified School District,* 191 Ariz. at 301-03.

Each Claimant has claims against Sheriff Penzone and Maricopa County under state law, including the infliction of emotional distress (intentional and negligent), defamation (slander and libel), false light invasion of privacy, and negligence.

Sheriff Penzone's digital publication of the Claimant's information on the Sheriff's "Mugshot Lookup" webpage conveyed to any reasonable reader a message of guilt, or a message of likely guilt, that constitutes defamation *per se* under Arizona law. *Peagler v. Phoenix Newspapers, Inc.,* 114 Ariz. 309, 315 (1977).

Sheriff Penzone's publishing of the Claimant's mugshot and personal information on the MCSO's "Mugshot Lookup" gallery next to the words "Crime Type" constitutes defamation *per se*. Sheriff Penzone's mugshot gallery is not just an announcement of any person's arrest. Rather, it is a condemnation of the character of every person appearing in the Sheriff's self-proclaimed "Mugshot Lookup."

The State of Arizona has long recognized that a mugshot itself conveys a message of guilt to the public. *State v. Moore,* 108 Ariz. 215, 218-19 (1972) (The Arizona Supreme Court held it is prejudicial error to admit a mugshot of a defendant because it suggests a criminal record). The Arizona Supreme Court held that even the mere use of the term "mug shot" conveys a highly prejudicial meaning that implies a criminal record. *State v. Jacobs,* 94 Ariz. 211, 213 (1963); *State v. Cumbo*, 9 Ariz.App. 253, 256 (1969) (A reference to the term 'mug shot' prejudicially implies a previous criminal record.); *State v. Kelly*, 111 Ariz. 181 (1974) cert. denied, 420 U.S. 935, 95 S.Ct. 1143 (1975) (The mention of a mugshot was prejudicial because that term creates an inference that the defendant had a prior criminal record).

Similar to defamation, each Claimant has a valid claim for false light invasion of privacy under Arizona law. False light invasion of privacy "protects against the conduct of knowingly or recklessly publishing false information or innuendo that a 'reasonable person' would find 'highly offensive.'" *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341 (1989). Sheriff Penzone digitally publishes such personal information with knowledge of the potential falsity and with reckless disregard for the truth. Although Sheriff Penzone knows that at least some of the arrestees on his 'Mugshot Lookup' gallery are actually innocent, the Sheriff does nothing to determine one's guilt before publishing such personal information on his website. "A plaintiff may bring a false light invasion of

6

privacy action even though the publication is not defamatory, and even though the actual facts stated are true." *Godbehere*, 162 Ariz. at 340.

Each Claimant has claims against Sheriff Penzone and Maricopa County under federal laws including but not limited to constitutional violations including claims based on 42 U.S.C. §1983 and other rights under the United States Constitution, including but not limited to the right of due process, the right to privacy, and the right of equal protection of the law as protected by the Fourteenth Amendment to the United States Constitution.

### III. Claimant's damages for claims and settlement amount.

As a direct result of the wrongful acts of Maricopa County and Sheriff Penzone, each Claimant has suffered and continues to suffer from a damaged reputation for the publishing of the mugshot personal information, and has incurred pain and suffering, potential loss of earning capacity, damage to reputation, and emotional distress.

Pursuant to A.R.S. §12-821.01, Mr. Houston will settle his claims with the County and Sheriff Penzone for the following amounts:

| | |
|---|---|
| Lost earnings/capacity and damage to reputation and privacy rights | $500,000 |
| Pain and suffering/emotional distress ...................................... | $1,000,000 |
| Punitive damages ................................................... | $1,000,000 |

The actions of Sheriff Penzone and Maricopa County are so egregious that a jury could award a much greater amount if this matter were taken to trial.

If there are any questions about additional information regarding the events or facts underlying this claim, or if there is any need for clarification as to either the facts underlying the claim or the facts supporting the amounts sought, it is expected that such inquiries will be directed within sixty (60) days of your receipt of this letter to the undersigned. Otherwise, all claims will be deemed valid.

This letter is submitted to comply with the Notice of Claim provisions of A.R.S. §12-821.01. Nothing in this letter shall be intended as a limitation to the damages to which any Claimant may be entitled or seek recovery, or if additional damages accrue after the date of this letter.

This letter is also subject to Rule 408 of the Arizona Rules of Evidence, and Rule 408 of the Federal Rules of Civil Procedure, and therefore, shall not be admissible in a court of law.

Sincerely,

ANDREW IVCHENKO PLLC

By: _____

Andrew Ivchenko
Attorney for Claimant

8