ASH

1
2
3
4
5

6 **IN THE UNITED STATES DISTRICT COURT**

7 **FOR THE DISTRICT OF ARIZONA**

8

9  Brian Houston,

10                         Plaintiff,

11  v.

12  County of Maricopa, et al.,

13                         Defendants.

14

No.  CV 22-00875-PHX-SPL (MTM)

**ORDER**

15         Plaintiff Brian Houston, who is represented by counsel, brought this civil rights and

16  putative class action pursuant to 42 U.S.C. § 1983 and Arizona state law.  Defendants have

17  filed a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim

18  pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).  (Doc. 26.)  The Motion is

19  fully briefed.  (Docs. 39, 41.)

20         The Court will grant the Motion.

21  **I.      Background**

22         Plaintiff seeks declaratory, injunctive, and monetary relief, as well as punitive

23  damages, for injuries allegedly arising from the publication of his mugshot and other

24  information on the Maricopa County Sheriff's Office (MCSO) website.[1]  Plaintiff names

25

26  _____

27         [1] Plaintiff also seeks class certification to represent others similarly situated.  (Doc.
   17); *see also* Doc. 1 at 2 ("Plaintiff and the putative Class are persons who have been
28  booked in the Maricopa County jail system and who have had their booking photograph . .
   ., criminal justice record, and other personal, confidential and identifying information . .
   . digitally published by Sheriff Penzone on the official MCSO Website . . .")

Maricopa County and Maricopa County Sheriff Paul Penzone as Defendants.[2]  Plaintiff alleges that he was arrested by the Phoenix Police Department on January 27, 2022, and charged with assault.  (*Id.* at 7).  Plaintiff was booked into the Maricopa County Jail, and his booking photograph ("mugshot") was taken.  Plaintiff's mugshot, as well as his name, birthdate, and "Crime Type," were then published on the "Mugshot Lookup" page of the MCSO website for approximately three days.  (*Id.*)  Plaintiff further alleges that "the charges against [Plaintiff] were not pursued . . .  and his case was dismissed."  (*Id.* at 8).  Nevertheless, "at least one" third party website "scraped" Plaintiff's mugshot and other information and published it on its own website, causing "permanent[] damage" to Plaintiff's "business and personal reputation" and "plac[ing Plaintiff] at risk of identity theft, fraud and extortion."  (*Id.* at 7-8).

Plaintiff further alleges that the MCSO policy manual requires that "personal identifying information"—which Plaintiff asserts includes "a date of birth"—be redacted prior to publication.  (*Id.* at 9).  Plaintiff additionally alleges that until April 4 or 5, 2022, the MCSO website included Google AdSense ads "that appeared when a website visitor performed a word search on the MCSO website," and that Defendants have used these ads to generate advertising revenue, including via the "Mugshot Lookup" page.  (*Id.* 9-10).

As such, Plaintiff—personally and on behalf of a putative class—alleged the following claims for relief:

Count One: Invasion of Privacy, False Light, and Violation of Arizona's Public Records Laws (*id.* at 24-31);

Count Two: Violation of Article II, section 8 of the Arizona Constitution (*id.* at 32-33);

Count Three: Negligent, Reckless, and Intentional Infliction of Emotional Distress (*id.* at 33-34);

Count Four: Violation of the Arizona Mugshot Act, Arizona Revised Statute §§ 44-

---

[2] Plaintiff also names "Jane Doe Penzone," Sheriff Penzone's wife.  However, Plaintiff includes her only for "marital community" purposes, and makes no allegations against her.

7901, *et seq.* (*id.* at 34-35);

Count Five: Violation of Due Process, under both the Fourteenth Amendment and the Arizona Constitution (*id.* at 36-46);

Count Six: Violation of the Fourteenth Amendment's Equal Protection Clause (*id.* at 47-50); and

Count Seven: Violation of the Sixth Amendment (*id.* at 50-53).

Defendants now seek dismissal of Plaintiff's federal claims for failure to state a claim, and resultant dismissal of Plaintiff's state law claims for lack of subject matter jurisdiction. (Doc. 26).  In Responding to Defendants' Motion, Plaintiff clarifies that

> All of Plaintiff's federal constitutional claims are derived under the Fourteenth Amendment.  Although Plaintiff does reference in his Complaint the Fourth and Fifth Amendments and the privileges and immunities secured by the U.S. Constitution, Plaintiff's constitutional causes of action are based on (1) the procedural and substantive due process rights under the Fourteenth Amendment; and (2) a claim under the Sixth Amendment, which is virtually identical to Plaintiff's substantive due process claim that the Sheriff's internet publication of mugshots is an improper form of punishment against an unconvicted pretrial detainee.  Plaintiff agrees to dismiss his Equal Protection claim.

(Doc. 39 at 3 n.1).  Accordingly, the remaining claims are five state law claims (Counts One through Four, and the portion of Count Five brought pursuant to the Arizona Constitution), and two federal claims (Counts Five and Seven).

## II.    Legal Standard

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP,* 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).  In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  A pleading must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

As a general rule, when deciding a Rule 12(b)(6) motion, the court looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). If a court considers evidence outside the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). A court may, however, consider documents incorporated by reference in the complaint or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *Id.*

**III.   Discussion**

As the question of whether to exercise supplemental jurisdiction over Plaintiff's state law claims can only be resolved after the Court has determined whether Plaintiff has properly invoked this Court's original jurisdiction, 28 U.S.C. § 1367(c)(3), the Court will discuss Plaintiff's federal claims (Counts Five and Seven) first. The Court begins with Plaintiff's Sixth Amendment claim (Count Seven), as it requires the least discussion.

**A.   Sixth Amendment**

The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed; which district shall have been previously ascertained by law,

1
2
3

> and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence.

4
5
6
7
8
9

U.S. Const. amend. VI.  Plaintiff asserts that "[w]hen Sheriff Penzone unilaterally labeled each of the Plaintiffs as a criminal without due process in his internet publication, the Sheriff violated the Plaintiffs' rights to a speedy trial and other protections under the Sixth Amendment." (Doc. 1 at 50).[3]  However, Plaintiff also indicates that "the charges against [Plaintiff] were not pursued . . . and his case was dismissed." (*Id.* at 8).  As such, there was no prosecution or trial, and thus no violation of Plaintiff's right to a speedy and public trial.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Further, Plaintiff indicates that his Sixth Amendment claim is brought "through the Fourteenth Amendment." (*Id.* at 50); *see also id.* at 3 n. 1 ("All of Plaintiff's federal constitutional claims are derived under the Fourteenth Amendment.").  Indeed, Plaintiff describes his "Sixth Amendment" injury as "a form of punishment," and makes clear that such "punishment" is prohibited "[u]nder the Due Process Clause" of the Fourteenth Amendment. (*Id.* at 52-3); *see also id.* at 3 n.1 (stating that Plaintiff's Sixth Amendment claim "is virtually identical to Plaintiff's substantive due process claim").  It is unclear how a Sixth Amendment claim can also be a Fourteenth Amendment claim.  Regardless, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process [under the Fourteenth Amendment]." *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 853 (9th Cir. 2007) (citation omitted); *see Albright v. Oliver*, 510 U.S. 266, 273 (1994) (arrestee's claim that he was arrested without probable cause could only be analyzed under the Fourth Amendment and the Fourteenth Amendment's substantive due process clause could afford no relief); *Fontana v. Haskin*, 262 F.3d 871, 881 (9th Cir. 2001) (same); *see also Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 366 (2017).  Because Plaintiff has no Sixth Amendment

28

---

[3] Plaintiff does not identify any "other protections" arising outside of the Sixth Amendment's speedy trial guarantee.

cause of action, the Court will consider Plaintiff's substantive due process arguments separately.   Accordingly, Count Seven will be dismissed.

**B.    Due Process**

Plaintiff alleges that Defendants violated both his procedural and substantive due process rights.  (Doc. 1 at 45) ("Plaintiffs have a valid cause of action against Defendants for both substantive due process and procedural due process. . . .").  The Court will address each in turn.  First, however, the Court finds it useful to briefly discuss the facts and holding in *Paul v. Davis*, 424 U.S. 693 (1976), as the Court concludes that it is the most closely analogous case to the issues at bar in the Complaint.

1.    *Paul v. Davis*

In *Paul*, the plaintiff (Davis) had been arrested and charged with shoplifting in Kentucky.  424 U.S. at 695.  While his prosecution remained pending, the local police department distributed a flyer to approximately 800 local businesses warning them of "active shoplifters."  *Id.*  Davis's name and mugshot appeared in the flyer.  *Id.* at 696.  After his charges were dismissed, Davis sued the police under § 1983 for, as relevant here,[4] violating his due process rights under the Fourteenth Amendment in distributing the flyer with his name and picture and labeling him an "active shoplifter."  *Id.* at 696-97.

Noting that Davis's allegations "state a classical claim for defamation actionable in the courts of virtually every State," the Supreme Court observed that if Davis's theory of his cause of action were countenanced, "a person arrested by law enforcement officers who announce that they believe such person to be responsible for a particular crime . . . presumably obtains a claim against such officers under § 1983."  *Id.* at 698.  If so, the Supreme Court continued,

> [i]t is hard to perceive any logical stopping place to such a line of reasoning.   [Davis's] construction would seem almost necessarily to result in every legally cognizable injury which may have been inflicted by a state official acting under 'color

---

[4] Davis also alleged claims arising pursuant to the First, Fourth, Fifth, and Ninth Amendments.  *Id.* at 712.  Although Plaintiff made reference to the Fourth and Fifth Amendments in his Complaint, as well as to the Privileges and Immunities Clause, he has expressly disclaimed any claims arising pursuant to these protections.  (Doc. 39 at 3 n.1).

> of law' establishing a violation of the Fourteenth Amendment. We think it would come as a great surprise to those who drafted and shepherded the adoption of that Amendment to learn that it worked such a result, and a study of our decisions convinces us they do not support the construction urged by [Davis].

*Id.* at 698-99.

The Court observed that Davis's claim could only arise, if at all, from one of two possible premises. First, "that the Due Process Clause of the Fourteenth Amendment and § 1983 make actionable many wrongs inflicted by government employees which had heretofore been thought to give rise only to state-law tort claims." *Id.* at 699. Or, second, "that the infliction by state officials of a 'stigma' to one's reputation is somehow different in kind from the infliction by the same official of harm or injury to other interests protected by state law, so that an injury to reputation is actionable under § 1983 and the Fourteenth Amendment even if other such harms are not." *Id.*

As to the first premise, the Court noted that it had long observed that "[v]iolation of local law does not necessarily mean that federal rights have been invaded." *Id.* at 700 (quoting *Screws v. United States*, 325 U.S. 91, 108-09 (1945). This "limited effect" of the Fourteenth Amendment was reaffirmed in *Monroe v. Pape*, 365 U.S. 167 (1961), where the Court found that a Fourteenth Amendment claim was actionable where it alleged an unreasonable search and seizure protected by the Fourth Amendment. *Id.* (citing *Monroe*, 365 U.S. at 171). In *Paul*, however, the plaintiff had "pointed to no specific constitutional guarantee safeguarding the interest he asserts has been invaded," but instead "apparently believes that the Fourteenth Amendment's Due Process Clause should *ex proprio vigore* extend to him a right to be free of injury wherever the State may be characterized as the tortfeasor." *Id.* at 700-01. The Supreme Court declined to approve such a construction, and thus dispensed with the first possible premise of Davis's claim, because

> such a reading would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States. We have noted the constitutional shoals that confront any attempt to derive from congressional civil rights statutes a body of general federal tort law. . . ; A fortiori, the procedural guarantees of the Due Process Clause cannot be the source of such law.

1    *Id.* at 701 (internal quotation and citation omitted).

2         As to the second premise, the Supreme Court noted that "[t]he words 'liberty' and

3    'property' as used in the Fourteenth Amendment do not in terms single out reputation as a

4    candidate for special protection over and above other interests that may be protected by

5    state law." *Id.* at 701.  Surveying its own precedent and conceding that prior cases had

6    "pointed out the frequently drastic effect of the 'stigma' which may result from defamation

7    by the government in a variety of contexts," the Supreme Court nevertheless concluded

8    that "the weight of our decisions establishes no constitutional doctrine converting every

9    defamation by a public official into a deprivation of liberty within the meaning of the Due

10   Process Clause of the Fifth or Fourteenth Amendment." *Id.* at 701-02.  However, the

11   Supreme Court recognized that "there exists a variety of interests which are difficult of

12   definition," but are nevertheless actionable under the Fourteenth Amendment "by virtue of

13   the fact that they have been initially recognized and protected by state law…" *Id.* at 711.

14   The Supreme Court clarified that procedural due process protections apply to reputational

15   harm when a plaintiff suffers stigma from governmental action plus the alteration or

16   extinguishment of "a right or status previously recognized by state law." *Id.*  Finding that

17   Kentucky law extended no relevant right or status to Davis, the Supreme Court concluded

18   that the flyer, "however seriously [it] may have harmed [Davis's] reputation, did not

19   deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause."

20   *Id.* at 712.

21        In sum, the Court finds the facts in *Paul* to be functionally identical to those

22   presented in the instant Complaint.  *Paul* provides that the procedural protections of the

23   Fourteenth Amendment's Due Process Clause apply where some right or status, previously

24   secured by state law, is "distinctly altered or abolished." *Id.* at 711.  However, because

25   *Paul* predates *Bell v. Wolfish*, 441 U.S. 520 (1979), it did not reach whether the Fourteenth

26   Amendment's *substantive* due process protections apply under facts similar to those

27   presented here.  Nevertheless, for the reasons discussed *infra*, the Court finds *Paul* to be

28   instructive when analyzing Plaintiff's substantive due process claim.

2.      Procedural Due Process

Consistent with *Paul*, Plaintiff asserts that his procedural due process claim does not arise from any "federal 'constitutional privacy right.'"  (Doc. 39 at 3) ("Plaintiff does not allege any violation of a federal 'constitutional privacy right.'").  Rather, Plaintiff asserts that Arizona's public records law creates a "right of privacy" in his birthdate, and from this state right he extrapolates his alleged federal procedural due process claim from Defendants' publication of his birthdate on the MCSO website.  (*Id.* at 19) ("Having established a state privacy right that has been violated by the Sheriff without due process, Plaintiff has stated a valid procedural due process claim under the Fourteenth Amendment.").[5]

Under Arizona's public records law, "[p]ublic records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours."  Ariz. Rev. Stat. § 39-121.  The public records law goes on to require that "[a]ll officers and public bodies shall maintain all records . . . reasonably necessary or appropriate to maintain an accurate knowledge of their official activities . . . which are supported by monies from the state or any political subdivision of the state."  Ariz. Rev. Stat. § 39-121.01(B).  "Arizona law defines 'public records' broadly and creates a presumption requiring the disclosure of public documents."  *Griffis*, 215 Ariz. 1, 4 (Ariz. 2007).[6]  A

_____

[5] Plaintiff also points to the MCSO Policy Manual as a basis for his procedural due process claim.  (Doc. 1 at 5, 25; Doc. 39 at 22).  Plaintiff cites *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005), for the proposition that "a liberty interest protected by the Fourteenth Amendment's Due Process Clause may arise 'from an expectation or interest created by state laws or policies,'" and extrapolating therefrom that the MCSO Policy Manual provides just such a basis.  (Doc. 39 at 22-23) (emphasis in original).  However, the MCSO Policy Manual is neither law nor policy *of the state*.  Rather, as its very title indicates, it applies only to the Maricopa County Sheriff's Office, which is not a state entity.  Plaintiff's further citation to *Mitchell v. Dupnik*, 75 F.3d 517 (9th Cir. 1996) is inapposite.  (Doc. 39 at 23).  In *Dupnik*, the Ninth Circuit did not hold that a county sheriff violated a pretrial detainee's rights because, as Plaintiff puts it, "the sheriff failed to follow his own written policy," but rather because that policy violated the federal Constitution.  75 F.3d at 525 ("The elements of due process in a prison disciplinary hearing have long been established by *Wolff v. McDonnell*, 418 U.S. 539 [] (1974), which the district court properly applied in determining that the Jail's witness policy violated [the Plaintiff's] constitutional right.").  Put simply, the liberty interest at issue in *Dupnik* did not arise from the sheriff's policy, but from federal law.

[6] Plaintiff concedes that his birth date is a public record.  (Doc. 1 at 8).

1  party seeking to challenge disclosure of some record must file a special action in Arizona
2  state court.  Ariz. Rev. Stat. § 39-121.02(A).[7]

3        Plaintiff has not, and cannot credibly, argue that Defendants have somehow
4  prevented him from filing a special action pursuant to § 39-121.02(A).  Put simply, if
5  Plaintiff believed that his birthdate, mugshot, or other information was improperly
6  disclosed by Defendants, the process due to him was to file a special action contesting that
7  disclosure.  Indeed, that process remains open to him.  His failure to seek it, however, does
8  not give rise to a federal procedural due process claim.  *Paul*, 424 U.S. at 701 ("such a
9  reading would make of the Fourteenth Amendment a font of tort law to be superimposed
10 upon whatever systems may already be administered by the States.")

11       Plaintiff asserts that the Ninth Circuit's decision in *Marsh v. City of San Diego*, 680
12 F.3d 1148 (9th Cir. 2012) is "[d]irectly on point."  (Doc. 29 at 20).  It is, but not in a way
13 helpful to Plaintiff.  Although Plaintiff correctly points out that *Marsh* provides that "[o]nce
14 a state creates a liberty interest, it can't take it away without due process" (Doc. 39 at 20)
15 (quoting *Marsh*, 680 F.3d at 1155), the state provided that process here in the form of a
16 special action pursuant to § 39-121.02(A).  Having failed to avail himself of that process,
17 Plaintiff cannot credibly argue that Defendants somehow deprived him of his procedural
18 due process rights.

19       Further,  in *Paul*, the Supreme Court clarified that procedural due process
20 protections apply to *reputational* harm only when a plaintiff suffers stigma from
21 governmental action plus alteration or extinguishment of "a right or status previously
22 recognized by state law." 424 U.S. 693, 711.  This has become known as the "stigma plus"
23 test.   *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1184-85 (9th Cir.
24 2008),*overruled on other grounds by Los Angeles County v. Humphries*, 562 U.S. 29
25 (2010).  As such, in order to properly state a claim for a violation of procedural due process
26 actionable under § 1983, Plaintiff must allege that he suffered some "stigma," and that, as

27 _____

28       [7] The Court further notes that a party may seek damages, fees and costs as relief in
a special action brought pursuant to § 39-121.  Ariz. Rev. Stat. § 39-121.02(B)-(C).

a result of that stigma, "a right or status previously recognized by state law was distinctly altered or extinguished." *Id.* at 1186; *see also Paul*, 424 U.S. at 708 (indicating that the alteration must be "as a matter of state law"); *Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008) ("For a state statute or regulation to create a liberty interest protected by the Constitution . . . [f]irst, the law must set forth substantive predicates to govern official decision making and, second, it must contain explicitly mandatory language, i.e., a specific directive to the decision-maker that mandates a particular outcome if the substantive predicates have been met.") (citation and internal quotations marks omitted).

Plaintiff asserts that the Arizona Supreme Court recognized a "right of privacy" in his birthdate in *Scottsdale Unified School District v. KPNX Broadcasting*, 191 Ariz. 297 (Ariz. 1998), which dealt with the proper application of Arizona's public records law. Defendants contest that the holding in *Scottsdale* is as expansive as Plaintiff portrays (*see* Doc. 41 at 2-3),[8] but even assuming *arguendo* that Plaintiff has a "a recognized state law privacy interest" pursuant to *Scottsdale* that gives rise to a constitutionally protected liberty interest, Plaintiff alleges only that his "business and personal reputation has been permanently damaged." (Doc. 1 at 8).[9]  Mere reputational injury, however, is not sufficient to maintain a procedural due process claim.  *Paul*, 424 U.S. at 711; *see also Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (reaffirming that an injury to reputation by itself is not a protected liberty interest under the Fourteenth Amendment).

---

[8] The Court notes that the holding in *Scottsdale* is explicitly limited to "**the facts of this case**," which are facially distinguishable from those present here.  191 Ariz. at 303 (emphasis added).

[9] Plaintiff also alleges that he is "at risk of identity theft, fraud and extortion." (Doc. 1 at 8).  Plaintiff does not, however, allege that he *has* suffered any identity theft, fraud, or extortion, or allege facts to support that he is at imminent risk from those injuries.  As such, these injuries are too speculative to form the basis of any claim over which this Court has jurisdiction.  *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 617 (9th Cir. 1999) ("Article III of the federal Constitution requires that we decide only 'cases' or 'controversies.'  This requirement precludes the exercise of jurisdiction by a federal court unless the plaintiff has suffered some actual injury or faces a threatened injury, and the injury is fairly traceable to the action challenged and is likely to be redressed by a favorable decision.  Moreover, whenever a plaintiff seeks declaratory and injunctive relief, we have held that there must be a 'substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'") (internal citations omitted).

1    Further, Plaintiff has not alleged facts to support that some "right or status" has been
2    "distinctly altered or extinguished."  As an initial matter, Plaintiff's conclusory allegation
3    that his "right[] of privacy recognized under Arizona law is a right or status previously
4    recognized by state law that was distinctly altered or extinguished by the actions of
5    Defendants" (Doc. 1 at 45) is insufficient under Rule 8 of the Federal Rules of Civil
6    Procedure.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of
7    action, supported by mere conclusory statements, do not suffice."); Fed. R. Civ. P. 8(a)(2)
8    (a pleading must contain a "short and plain statement of the claim *showing* that the pleader
9    is entitled to relief.") (emphasis added).  More importantly, even assuming *arguendo* that
10   Plaintiff has a "right[] of privacy" in his birthdate, mugshot, or other information, Plaintiff
11   has not explained *how* that right has been "altered or extinguished" in light of the fact that
12   he retains the ability to bring a special action pursuant to § 39-121.02(A) to vindicate it.
13   That he has thus far chosen not to exercise that process does not mean that Defendants have
14   "altered or extinguished" the right it protects.  As such, Plaintiff cannot claim that any right
15   or status has been altered or extinguished "as a matter of state law."  *Paul*, 424 U.S. at 708.
16   Plaintiff also asserts that the United States Supreme Court has "recognized" what
17   Plaintiff refers to as "personal privacy rights" in *U.S. Dep't of Justice v. Reporters Comm.*
18   *For Freedom of Press*, 489 U.S. 749, 770 (1989).  Plaintiff's recognition that *Reporters*
19   *Committee* only applies "for FOIA purposes" (Doc. 39 at 13) gives away the game,
20   however.  "The question of the statutory meaning of privacy under the FOIA is, of course,
21   not the same as the question whether . . . an individual's interest in privacy is protected by
22   the Constitution."  *Id.* at 762 n. 13.  Indeed, the *Reporters Committee* Court cited *Paul*,
23   noting that there was "no constitutional privacy right affected by publication of [the] name
24   of [an] arrested but untried shoplifter."  *Id.*; *see also Doe v. Garland*, 17 F.4th 941, 947
25   (9th Cir. 2021) (citing *Reporters Committee* and noting that FOIA exemptions do not create
26   a federal constitutional right to privacy.)
27   Plaintiff attempts to sidestep this distinction, however, by arguing that "Arizona's
28   public records laws are governed by the federal FOIA caselaw," apparently in reference to

the Arizona Supreme Court's search for "guidance" in *Scottsdale* from "federal cases that have addressed" FOIA.  191 Ariz. at 300-301.  Although the *Scottsdale* Court intoned that it "adopt[ed] the analysis by the [United States] Supreme Court for use by Arizona courts in cases arising under our own public records law," this is a far cry from Plaintiff's argument that Arizona's public records law is somehow "governed" by federal FOIA caselaw.  Indeed, Judge Martone noted in his concurrence in *Scottsdale* that "[w]hile the federal Freedom of Information Act can be helpful in other contexts, it is not that helpful in deciding whether a birth date raises privacy interests sufficient to overcome the presumption of open records" because FOIA "cases concerning invasions of privacy arise under an exemption … that does not exist" under Arizona's public records law.  191 Ariz. at 304 (J. Martone, concurrence in part).

Even construed in the light most favorable to Plaintiff, this construction must fail. If Arizona's public records law is "governed" by *Reporters Committee* and its FOIA brethren, then that governance must include the distinction between rights protected by FOIA and rights actionable under the Fourteenth Amendment.  *Reporters Committee*, 489 U.S. at 762 n. 13 ("The question of the statutory meaning of privacy under the FOIA is, of course, not the same as the question whether . . .  an individual's interest in privacy is protected by the Constitution.").  Put simply, if *Reporters Committee* declined to find a constitutionally protected right even where a person had a right protected by FOIA, it strains credulity to conclude that *Arizona state public records law* nevertheless imputes such a right *via* FOIA.

Finally, Plaintiff cites *State v. Mixton*, 250 Ariz. 282 (Ariz. 2021), for the proposition that he also has a "privacy right[]" under Article II, § 8 of the Arizona State Constitution, more commonly referred to as the Private Affairs Clause.  (Doc. 1 at 32; Doc. 39 at 36).  However, the Arizona Supreme Court noted in *Mixton* that it "ha[s] yet to expand the Private Affairs Clause's protections beyond the Fourth Amendment's reach, except in cases involving warrantless home entries."  250 Ariz. 290.  *Mixton* did not break new ground, as it dealt with a post-conviction Fourth Amendment challenge to warrantless

1    searches of internet IP addresses.  *Id.*  Whatever "reasonable expectations of privacy"

2    Plaintiff believes he may have pursuant to the Private Affairs Clause,[10] the Arizona

3    Supreme Court has made clear that the Private Affairs Clause extends no further than the

4    protections provided by the Fourth Amendment.  *Id.*  Because Plaintiff does not, and

5    cannot, raise any Fourth Amendment claims related to the publication of his mugshot and

6    related information, he cannot find relief in the Private Affairs Clause.

7         Accordingly, for all these reasons, Plaintiff has failed to state a procedural due

8    process claim.

9                           3.    Substantive Due Process

10        Although the Fifth Amendment's Due Process Clause states only that "[n]o person

11   shall . . . be deprived of life, liberty, or property, without due process of law," *see* U.S.

12   Const. amend. V, courts have long held that it also provides substantive protections for

13   certain unenumerated fundamental rights.  *See e.g. Washington v. Glucksberg*, 521 U.S.

14   702, 719 (1997) ("The Due Process Clause guarantees more than fair process, and the

15   'liberty' it protects includes more than the absence of physical restraint.").  Indeed, the

16   Supreme Court has a long history of recognizing unenumerated fundamental rights as

17   protected by substantive due process.  *See, e.g.*, *Eisenstadt v. Baird*, 405 U.S. 438 (1972)

18   (to use contraception); *Griswold v. Connecticut*, 381 U.S. 479 (1965) (to use contraception,

19   to marital privacy); *Loving v. Virginia*, 388 U.S. 1 (1967) (to marry); *Rochin v. California*,

20   342 U.S. 165 (1952) (to bodily integrity); *Skinner v. Oklahoma ex rel. Williamson*, 316

21   U.S. 535 (1942) (to have children); *Pierce v. Society of Sisters*,  268 U.S. 510 (1925) (to

22   direct the education and upbringing of one's children); *Meyer v. Nebraska*, 262 U.S. 390

23   (1923) (same).

24        In *Glucksberg*, the Supreme Court set forth the two elements of the substantive due

25   process analysis:

26   _____

27        [10] Doc. 1 at 32 ("Sheriff Penzone's publication of Plaintiffs' mugshots and personal
28   and confidential information violates Plaintiffs' right to privacy, as such information was
     shared in such a manner that violated the reasonable expectations of Plaintiffs with respect
     to their privacy.")

> First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed." Second, we have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest.

*Glucksberg*, 521 U.S. at 720-21 (citations omitted).

However, the Supreme Court has cautioned against the doctrine's expansion. *See id.* at 720 (stating that the Court must restrain the expansion of substantive due process "because guideposts for responsible decision-making in this uncharted area are scarce and open-ended" and because judicial extension of constitutional protection for an asserted substantive due process right "place[s] the matter outside the arena of public debate and legislative action" (citations omitted)); *Reno v. Flores*, 507 U.S. 292, 302 (1993) (noting that "[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field") (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)). When evaluating a substantive due process claim, *Glucksberg* instructs that substantive due process requires a "careful description of the asserted fundamental liberty interest." *Glucksberg*, 521 U.S. at 721 (quotation and citations omitted); *see also Flores*, 507 U.S. at 302 (noting that the asserted liberty interest must be construed narrowly to avoid unintended consequences).

While "[p]retrial detainees have a substantive right against restrictions that amount to punishment, *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)), this right is only violated if such restrictions are "imposed for the purpose of punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The *Bell* test asks whether there was an express intent to punish, or "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Id.* (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)).

For a particular governmental action to constitute punishment, (1) the action must cause the detainee to suffer some harm or disability, and (2) the purpose of the

governmental action must be to punish the detainee.  *Id.* at 538 ("A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.").  The harm or disability must either significantly exceed, or be independent of, the inherent discomforts of confinement.  *Id.* at 537 ("Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility.  And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'").

As an initial matter, Plaintiff asserts that he "has pled facts stating that [no legitimate nonpunitive] purpose . . . exist[s]."  (Doc. 39 at 25).  Plaintiff further asserts that the Court "must assume that the Sheriff has no valid nonpunitive interest in publishing Plaintiff's mugshot and personal information on the Sheriff's official MCSO website" because the Court must presume the truth of the allegations in the Complaint.  (*Id.* at 3) (emphasis omitted).  However, of the citations identified by Plaintiff (Doc. 39 at 25),[11] none assert facts.  Rather, the allegations contained therein are legal conclusions, which the Court need not accept as true.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.");  Fed. R. Civ. P. 8(a)(2) (a pleading must contain a "short and plain statement of the claim *showing* that the

---

[11] *See* Doc. 1 ¶ 64 ("There was no legitimate state interest in publishing [Plaintiff's] mugshot and personal information, and upon information and belief, the same can be said with respect to virtually every other member of the Class."); *id.* ¶ 134 ("Defendants' actions here go way beyond 'mere insults and indignities.'  Here, Defendants Sheriff Penzone and the County acted in an arbitrary manner that harmed or destroyed the personal and business reputation of persons who are presumed innocent, for absolutely no valid interest and without advancing any legitimate state interest or law enforcement purpose."); *id.* ¶ 156 ("Sheriff Penzone's digital publication of Plaintiffs' mugshots and personal and confidential information on the MCSO Website does not advance any legitimate state interest or law enforcement purpose."); *id.* ¶ 204 ("Defendants' conduct also shocks the conscience of the Court and constitutes a gross abuse of governmental authority.  There was and is no legitimate state interest for Sheriff Penzone to publish the mugshots and personal and confidential information of Plaintiffs on the MCSO Website."); *id.* ¶ 211 ("Defendants' disparity in treatment of Plaintiffs, by publishing Plaintiffs' personal and confidential information on the internet, was not reasonably related to any legitimate penological interests, or any other legitimate state interest.")

1    pleader is entitled to relief.") (emphasis added).

2           In any event, even assuming the truth of the allegations in the Complaint, the Court

3    need not accept that "the Sheriff has no valid nonpunitive interest in publishing Plaintiff's

4    mugshot and personal information" because Plaintiff himself alleges that the Sheriff has

5    other purposes.  Plaintiff alleges in his Complaint that Penzone publishes the mugshots "to

6    enhance [his] reputation," and, indeed, directs an entire section of his complaint at the

7    alleged "commercial" purpose of the mugshots.  (*See* Doc. 1 at 10, 34-35 (alleging that

8    "Defendants have used the MCSO Website to generate advertising revenue through Google

9    AdSense ads," and that they do so "for a commercial purpose").).  As such, the Court does

10   not blindly accept that there is no legitimate governmental purpose behind the publication

11   of Plaintiff's mugshot and related information.

12          Plaintiff rests his substantive due process claim on *Demery v. Arpaio*, 378 F.3d 1020

13   (9th Cir. 2004).   In *Demery*, the Ninth Circuit held that the live public broadcast of

14   webcams from inside the Maricopa County Jail violated detainees' substantive due process

15   rights.  *Id.* at 1033.  Engaging in the *Bell* test, the *Demery* Court found that the detainees

16   suffered harm because the webcasts were humiliating and discomforting, and that the

17   webcasts were punitive because they were "not reasonably related to a nonpunitive

18   purpose."  *Id.* at 1029-33.

19          In their Motion to Dismiss, Defendants appear to argue that Plaintiff has not suffered

20   any harm sufficient embraced by the *Bell* Test.  (Doc. 26 at 20 ("The idea that government

21   dissemination of public information about an individual's criminal arrest is a 'punishment'

22   because it may have a negative impact on the individual is erroneous as a matter of law.")

23   However, given that *Demery* found "humiliation" and "discomfort" sufficient for

24   substantive due process purposes, and given that Plaintiff explicitly alleges that the

25   publication of his mugshot and related information caused him "public humiliation" (Doc.

26   1 at 32-33), the Court concludes that Plaintiff has sufficiently alleged a harm.  Whether

27   Plaintiff has sufficiently alleged a substantive due process claim thus turns on whether the

28   publication of Plaintiff's mugshot and related information was done for the purpose of

1    punishment or whether it had some other, legitimate governmental interest motivating it.

2    *Bell*, 441 U.S. at 538 ("A court must decide whether the disability is imposed for the

3    purpose of punishment or whether it is but an incident of some other legitimate

4    governmental purpose.").

5          Defendants assert that publication of the mugshots and related information has two

6    legitimate, non-punitive purposes: First, it "meet[s] Arizona public records laws

7    requirements that all public records <u>shall</u> be made available for inspection," and, second, it

8    "increase[s] transparency in the criminal justice system."  (Doc. 26 at 21-22) (citing Ariz.

9    Rev. Stat. § 39-121) (emphasis in original).  Plaintiff argues that both justifications are

10   meritless.  As to the first, Plaintiff argues only that it "is nonsensical . . .  grasping at

11   straws," and "refuted" by *Scottsdale*.  (Doc. 39 at 27).  Plaintiff does not, however, explain

12   how adherence to Arizona state law is "nonsensical" or otherwise not a legitimate

13   governmental purpose for publishing what Plaintiff concedes are public records.  Further,

14   and as discussed above, *Scottsdale* only held—at most—that Arizonans have a "right of

15   privacy" in their birthdate *for purposes of Arizona's public records law*.  Plaintiff has not

16   identified, and the Court is not aware of, any precedent holding that a state court case

17   interpreting a state public records law can give rise to a federal substantive right.  Plaintiff's

18   substantive due process claim must arise, if at all, from the Fourteenth Amendment.

19         As to Defendants second proffered purpose, Plaintiff asserts that it was rejected in

20   *Demery*, block-quoting a large passage:

21              Second, Sheriff Arpaio argues that the cameras are justified by
                the County's interest in having its pretrial detention centers
22              open to public scrutiny.  We have given prison officials wide
                latitude in administering pretrial detention facilities, in
23              guaranteeing detainees' attendance at trial, and in promoting
                prison safety.  But we fail to see how turning pretrial detainees
24              into the unwilling objects of the latest reality show serves any
                of these legitimate goals.  As the Supreme Court has
25              recognized, '[i]nmates… are not like animals in a zoo to be
                filmed and photographed at will by the public or by media
26              reporters, however 'educational' the process may be for others.
                . . . Here, similarly, the otherwise valid governmental interest
27              in assuring accountability and public scrutiny cannot justify
                broad public exposure of pretrial detainees' intimate
28              circumstances, as none of the purposes of justifying pretrial
                detention are served thereby.  The Sheriff's policy is all the

> more troubling because displaying images of the County's pretrial detainees to internet users from around the world is not rationally connected to goals associated with educating the citizenry of Maricopa County.

(Doc. 39 at 28 (emphasis and internal citations omitted).).

The Court notes that, even here, the Ninth Circuit observed that government officials are traditionally afforded "wide latitude," and that ensuring accountability and public scrutiny are "valid governmental interests" that were overcome only on the unique facts in *Demery*. *Demery* does not stand for the general proposition that transparency in the criminal justice system is not a legitimate, non-punitive purpose for publishing mugshot and arrest information.

More importantly, however, is that Plaintiff deliberately omits a footnote from this block quote.[12]  In that footnote, the Ninth Circuit discussed *Paul*, and "recognize[d]" that "the Supreme Court has held that the disclosure of an arrest record does not violate a constitutionally protected right of privacy."  378 F.3d at 1032 n.6.  In distinguishing *Demery* from *Paul*, the Ninth Circuit further observed that "the release of arrest records was not a condition of pretrial detention," and that "[m]ore importantly, there is a stark difference between releasing an arrest record and thereby publicizing only 'the fact of [a detainee's] arrest' . . . and streaming live images of a pretrial detainees every movement across the broad spectrum of the internet."  *Id.* (internal citation omitted).

As such, this case is much more similar to *Paul* than to *Demery*.  The publication of Plaintiff's mugshot and other information is "not a condition of pretrial detention," and thus does not invoke the Fourteenth Amendment's protections.  "More importantly," the Ninth Circuit saw "a stark difference" between "releasing an arrest record" that "publiciz[ed] only 'the fact of [a detainees] arrest" and "streaming live images of a pretrial detainees every movement across the broad spectrum of the internet," and concluded that only the latter violated substantive due process.  Although Plaintiff's mugshot may be "stream[ed] . . . across the broad spectrum of the internet," it is much closer in type to an

---

[12] Plaintiff provides this omitted footnote later in his Response.  (Doc. 39 at 31-32).

"arrest record that publiciz[es] only 'the fact of [Plaintiff's] arrest" than a "live image of his every movement,"[13] and thus not violative of substantive due process.  Put simply, because Plaintiff's substantive due process claim must arise, if at all, from the Fourteenth Amendment, and because the Ninth Circuit—citing *Paul*—has "recognize[d]" that "the Supreme Court has held that the disclosure of an arrest record does not violate a constitutionally protected right of privacy," Plaintiff's claim must fail.

The Court recognizes that the internet presents unique privacy challenges. However, the Supreme Court has indicated that these challenges do not alter the analysis when balancing privacy against state action.  Analyzing whether Alaska's sex offender registration law—which required, in part, that the registry be published on the internet—constituted retroactive punishment in violation of ex post facto, the Supreme Court noted in *Smith v. Doe*, 538 U.S. 84 (2003), that

> the stigma of Alaska's [sex offender registration] Law results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment.  On the contrary, our criminal law tradition insists on public indictment, public trial, and public imposition of sentence. Transparency is essential to maintaining public respect for the criminal justice system, ensuring its integrity, and protecting the rights of the accused.
> . . .
> The fact that Alaska posts the information on the Internet does not alter our conclusion.  It must be acknowledged that notice of a criminal conviction subjects the offender to public shame, the humiliation increasing in proportion to the extent of the publicity.  And the geographic reach of the Internet is greater than anything which could have been designed in colonial times.  These facts do not render Internet notification punitive.  The purpose and the principal effect of notification are to inform the public for its own safety,

---

[13] Indeed, Plaintiff alleges that his mugshot and related information was only posted on the MCSO website for approximately three days. (Doc. 1 at 8).  Although Plaintiff also alleges that his mugshot and information was "scraped" by "at least one" third party website and is thus "memorialized on the internet for all time" (doc. 1 at 8), this harm was not caused by Defendants, whom Plaintiff concedes only published his mugshot and information for approximately three days.  Rather, this harm arises from the actions of the "private online mugshot operator," who Plaintiff has not named as a Defendant and in any event, as a "private" party, would not be a proper party to any claims brought pursuant to §1983.

> not to humiliate the offender.  Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.
>
> The State's Web site does not provide the public with means to shame the offender by, say, posting comments underneath his record. An individual seeking the information must take the initial step of going to the Department of Public Safety's Web site, proceed to the sex offender registry, and then look up the desired information.  The process is more analogous to a visit to an official archive of criminal records than it is to a scheme forcing an offender to appear in public with some visible badge of past criminality.  The Internet makes the document search more efficient, cost effective, and convenient for Alaska's citizenry.

*Smith v. Doe*, 538 U.S. 84, 97-99 (2003).

So, too, here.  The publication of Plaintiff's mugshot and arrest information is "accurate information" that is admittedly public record and which provides transparency into the activities of the MCSO.  The MCSO website does not provide a means to shame Plaintiff "by, say, posting comments underneath his record," and any "humiliation is but a collateral consequence" of people voluntarily seeking out the information.  In short, MCSO's "Mugshot Lookup" may be poor policy, it may be embarrassing and unseemly, even vulgar, but it is not unconstitutional.  As Judge Bea observed in his dissent in *Demery*, such concerns "must be vindicated … in the ballot box, not the courtroom."  378 F.3d at 1042 (J. Bea, dissent).  Accordingly, Plaintiff has failed to state a federal cause of action.[14]

### C.    State Law Claims

As noted at the outset, the remainder of Plaintiff's claims arise pursuant to Arizona state law.  Under 28 U.S.C. § 1367(a), subject to exceptions which are not relevant here, the district courts have supplemental jurisdiction over state law claims in any civil action in which the district courts also have original federal jurisdiction over all other claims in the case.  But "once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under § 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.,* 114 F.3d 999, 1000 (9th Cir. 1997) (en banc).  "The district court may decline to

---

[14] Because the Court concludes that Plaintiff has failed to allege a constitutional violation, it does not reach the question of whether Defendant Penzone is entitled to qualified immunity.

exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Moreover, the Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Gini v. Las Vegas Metro. Police Dept.*, 40 F.3d 1041, 1046 (9th Cir. 1994) (when federal law claims are eliminated before trial, the court generally should decline jurisdiction over state law claims and dismiss them without prejudice). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims in Counts One through Four (and the portion of Count Five brought pursuant to the Arizona Constitution), and will thus dismiss those counts without prejudice.[15]

**IV.   Dismissal Without Leave to Amend**

For the reasons stated herein, Defendants' Motion to Dismiss will be granted as to Counts Five and Seven, and the Court will decline supplemental jurisdiction over the remaining Counts. Further, because Plaintiff's federal causes of action fail as a matter of law and cannot be remedied by additional factual allegations, the Court will dismiss the Complaint and this action.

**IT IS ORDERED:**

(1)   The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. 26).

(2)   Defendants' Motion to Dismiss (Doc. 26) is **granted**, and the action is dismissed without prejudice. The Clerk of Court must enter judgment accordingly.

. . . .

. . . .

. . . .

---

[15] The Court notes that Defendants have briefed whether the Court should retain supplemental jurisdiction over Plaintiff's state law claims if his federal claims are dismissed. *See* Doc. 26 at 24-25; Doc. 42 at 1-2. Although Plaintiff had the opportunity to respond, he failed to address the issue. *Ho v. Russi*, No. 20-55915, 2022 WL 3570597, at *2 (9th Cir. Aug. 19, 2022).

1          (3)      Plaintiff's Motion to Certify Class (Doc. 17) is **denied** as moot.

2     Dated this 14th day of March, 2023.

3

4                                                    Honorable Steven P. Logan
                                                     United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28