Alex R. Straus*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
Telephone: (866) 252-0878
astraus@milberg.com

William A. Ladnier*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (866) 252-0878
wladnier@milberg.com

Andrew Ivchenko (SBN 021145)
**ANDREW IVCHENKO, PLLC**
4960 South Gilbert Road, #1-226
Chandler, Arizona 85249
Telephone: (480) 250-4514
aivchenkopllc@gmail.com

Daniel Kloberdanz
**KOZUB KLOBERDANZ**
7537 East McDonald Drive
Scottsdale, Arizona 85250
Telephone: (480) 624-2700
dkloberdanz@bkl-az.com

*admitted *pro hac vice*

*Attorneys for Plaintiff Brian Houston and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Brian Houston, a married man; and other persons similarly situated (the Class),

Plaintiff,

v.

Maricopa County, Arizona; Paul Penzone, Sheriff of Maricopa County, Arizona, and Jane Doe Penzone,

Defendants.

Case No. 2:22-cv-00875-SPL-MTM

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER PURSUANT TO RULE 26(c) (Deposition of Sheriffs)**

(Relates to Doc. 86)

Plaintiff Brian Houston ("Plaintiff"), on behalf of himself and all others similarly situated, hereby files his response to Defendants' Motion for Protective Order (Doc. 86). For the reasons explained below, this Court must deny Defendants' request for a protective order.

## I. INTRODUCTION

Defendants seek an order barring Plaintiff from deposing former Sheriff Joseph Arpaio, former Sheriff Paul Penzone, and current Sheriff Jerry Sheridan (collectively, the "Sheriffs").[1] That request is extraordinary because it targets the only officials who exercised final decision-making authority over the challenged publication practice and whose purposes and objectives are central to the surviving claim.

Defendants' demand fails for a simple reason: the Ninth Circuit held that Plaintiff's surviving claim turns on whether the practice was maintained for a punitive purpose. The purposes, objectives, and justifications for the policy are therefore merits issues. Those issues cannot be resolved through institutional testimony alone. They require testimony from the Sheriffs who implemented, continued, modified, removed, and reinstated the practice. A Rule 30(b)(6) designee who did not make those decisions and cannot explain why key features of the policy existed is not a substitute for the policymakers whose intent is at issue.

Rule 26(c) permits protective relief only upon a particularized showing of specific harm. Defendants identify none. What they seek instead is an order shielding the most probative witnesses on municipal policy and punitive intent. The motion should be denied.

## II. FACTUAL BACKGROUND

Plaintiff was a pretrial detainee whose booking photograph – mugshot – and arrest information were published on the Maricopa County Sheriff's Office ("MCSO") official website (the "MCSO Website"). He filed this putative class action on May 23, 2022, alleging that Defendants' policy of publishing the mugshots and identifying information of pretrial detainees on the internet violated the Constitution.

---

[1] Defendants take a consistent position regarding the deposition of Sheriff Russ Skinner, thus, Plaintiff includes discussion of Sheriff Skinner herein.

The publication practice did not arise from a low-level administrative custom. It was created, maintained, altered, suspended, and later reinstated by successive Sheriffs—the final policymakers for MCSO. Each exercised exclusive policy-making authority during his tenure. *See* Defendants' Rule 30(b)(6) testimony, Exhibit B, pp. 327:3-335:24.[2] Each made—or ratified—decisions that define the policy's purpose, structure, and operation.

Defendants argue that their Rule 30(b)(6) designee renders the Sheriffs' testimony "duplicative" and unnecessary. Defs.' Mot. for Protective Order (Doc. 86 at 3–5). The record shows otherwise.

Defendants' Rule 30(b)(6) witness testified in two sessions – January 8, 2026, and February 18, 2026 (*See* FN 2). The six-week interval did not cure the lack of preparation. Even during the second session, Defendants' designee – who also verified Defendants' discovery responses – could not answer basic, case-specific questions.

Plaintiff claims reputational harm from MCSO's three-day publication of his mugshot and the foreseeable re-posting by third parties. Yet the corporate representative did not know when Plaintiff was arrested. Exhibit B, p. 239:9-13. He did not know the charge. *Id.*, p. 239:5-8. He did not know whether the charge resulted in a conviction or was dismissed. *Id.*, at 239:14-18. He did not know whether MCSO ever published Plaintiff's mugshot. *Id.*, p. 240:5-20. He did not know how long it remained on the website. *Id.*, p. 240:21-241:7. He did not know whether any third party re-posted the image or whether it remains searchable online. *Id.*, p. 241:9–21.

These are not peripheral details. They are the most basic facts in the case—facts that matter when the witness has verified the organization's discovery responses. And Rule 30(b)(6) imposes significant responsibilities and obligations. The designee must thoroughly prepare and be prepared to testify about information reasonably available to the organization. That did not happen here.

The failure goes beyond Plaintiff-specific facts. Defendants' designee does not know—and did not ask any of the Sheriffs—the most fundamental questions about the policy itself. Each

[2] Defendants' Rule 30(b)(6) designee, Chris Hegstrom, testified in two parts: January 8, 2026, attached hereto as Exhibit A, and February 18, 2026, attached hereto as Exhibit B.

Sheriff possesses unique knowledge of relevant and consequential events and decisions that bare directly on Plaintiff's allegations.

### A. Sheriff Joseph Arpaio—Creation and Design of the Policy

Sheriff Arpaio created the mugshot-lookup webpage in 2011 and approved the public communications announcing and describing it. Press releases concerning the feature were issued only with his approval. His decisions established the core structure of the policy: publication of pretrial detainees' photographs on the internet, inclusion of identifying information such as dates of birth, a fixed three-day display period, and – to his credit – it was his decision to include the "**PRE-TRIAL INMATES ARE INNOCENT UNTIL PROVEN GUILTY!**" disclaimer ("presumption of innocence disclaimer"). Those design choices — and the reasons for them — are central to Plaintiff's claim that the policy was maintained for a punitive purpose.

Although he testified as the County's corporate representative, he does not know why the disclaimer was added, (Exhibit A, p. 135:9-18, Exhibit B, pp. 253:17-254:4), who decided to remove it, (Exhibit B at 243:19-21), or why it was removed. Exhibit A, p. 132:4-8 and Exhibit B at 262:20-25. He does not know why dates of birth, height, weight, and other identifying characteristics were included. Exhibit B, pp. 244:13-246:22, 247:4-13. He does not know who made those decisions. *Id*, p. 246:24-247:2. And he did not identify any study, data, or analysis—before or after implementation—evaluating the policy's purpose or effect. *Id.*, pp. 273:23-274:3, 367:24-368:12.

In preparing for his testimony, Defendants' Rule 30(b)(6) witness asked Sheriff Arpaio only two questions. First, he asked "if there were any press releases" related to the publication of mugshots. *Id.*, p. 356:7-12. Sheriff Arpaio remembered two press releases. *Id.*, p. 356:13-18. Lastly, Defendants' 30(b)(6) witness "believes he asked" Sheriff Arpaio why he started publishing mugshots. Sheriff Arpaio first said he "didn't recall the reason." *Id.*, p. 357:4 (Feb. 18, 2026). Then, according to Defendants, Sheriff Arpaio listed every one of the stated purposes Defendants now claim in this litigation:

> Q. Did you ask him why he started the mugshot lookup
> page to begin with?
> A. I believe I did ask him.
> Q. What did he say?
> A. He didn't recall the reason. He said he
> remembered it being a transparency thing and he stated all
> of the things that we -- the investigative tools, the
> transparency, and I believe he even said the efficiencies.

*Id*., pp. 356:25 - 357:1-7.

The inquiry stopped there. The designee did not ask about the inclusion of identifying information, the three-day publication period, the "Mugshot of the Day" feature, the purpose of the disclaimer, the risk of third-party scraping, or the reputational consequences of publication. He did not inform Sheriff Arpaio that his answers would become the County's sworn testimony in this class action.

Defendants thus remain unable to explain the original purpose, structure, or design of the policy. And they concede that they are not aware of anyone other than Sheriff Arpaio who can. *Id*., p. 366:5–19. That testimony establishes that Sheriff Arpaio possesses unique, first-hand knowledge unavailable from any other source.

**B. Sheriff Paul Penzone—Continuation and Removal of the Innocence Disclaimer**

Sheriff Penzone succeeded Sheriff Arpaio and made the decision to continue publishing both arrestee mugshots and personally identifiable information otherwise deemed confidential by Maricopa County and the Maricopa County Sheriff's Office. *Id.*, p. 330:13–14, 331:2–16.

From its creation in 2011, every mugshot page had displayed the presumption-of-innocence disclaimer – "**PRE-TRIAL INMATES ARE INNOCENT UNTIL PROVEN GUILTY!**" – in large, bold, all-capital letters. That disclaimer disappeared while Sheriff Penzone was in office, which ended January 12, 2024.

That change is merit critical. The circumstances of that removal bear directly on the merits. Whether the disclaimer was removed, when it was removed, why it was removed, and what the Sheriff knew about the consequences of its removal go to the policy's purpose and operation.

Defendants' Rule 30(b)(6) designee cannot answer those questions. He testified that Defendants do not know and did not ask Sheriff Penzone about the removal of the disclaimer or any of the issues that follow from it. *Id.*, pp. 263:24-265:5.

Nor can Defendants identify any other witness who can. They have conceded that they are not aware of anyone apart from Sheriff Penzone who possesses that information. *Id.*, pp. 365:7–366:3.

On this record, the Rule 30(b)(6) testimony does not duplicate Sheriff Penzone's knowledge. It confirms that his first-hand testimony is the only available source of the facts surrounding the most consequential change to the policy.

**C. Interim Sheriff Russ Skinner—Ratification and Continuation**

Interim Sheriff Russ Skinner succeeded Sheriff Penzone and served as the final decisionmaker for MCSO until the mugshot website was taken down on September 9, 2024. *Id.,* pp. 330:16–20, 331:19–23, 334:19–24. The policy remained in effect during his tenure and continued to operate in the same form–including the absence of the presumption-of-innocence disclaimer—until that date.

Sheriff Skinner was the Sheriff when MCSO first suspended the publication of pretrial detainees' mugshots following the Ninth Circuit's decision. The timing, basis, and internal decision-making that led to that shutdown bear directly on the policy's purpose, operation, and constitutional implications. Those are not historical details; they are the only evidence of how the final policymaker responded when the governing law changed.

Defendants' Rule 30(b)(6) designee cannot supply that information. He testified that MCSO does not know whether Sheriff Skinner knew the disclaimer had been removed *Id.* at 347:25-348:11, whether he considered reputational harm. *Id.*, p. 367:11-22, or whether he evaluated the effectiveness or purpose of the policy at any time during his tenure. *Id.*, p. 347:16-348:11. Nor could he identify any study, analysis, or data assessing whether the policy served its stated objectives. *Id.*, p. 260:1-25.

The designee also did not testify about the decision to take the website down in September 2024. When questioned about the discussions, communications, and decision-making surrounding that event, defense counsel instructed the witness not to answer based on attorney-client privilege. As a result, the corporate testimony contains no facts regarding who made the decision, what information was considered, what alternatives were evaluated, or what reasons were given for suspending the publication of mugshots.

On this record, the only person with first-hand knowledge of the decision to continue the policy after the disclaimer was removed—and the decision to suspend it after the Ninth Circuit's ruling—is the final policymaker who held office at the time. Sheriff Skinner's tenure therefore reflects both the continuation of the policy in its challenged form and the first official action taken in response to controlling appellate authority.

**D. Sheriff Jerry Sheridan—Reinstatement and Structural Revision**

Sheriff Jerry Sheridan took office on January 1, 2025. In August 2025, he reinstated the mugshot publication in a revised form. The new version restored a presumption-of-innocence disclaimer and eliminated the publication of dates of birth and other identifying characteristics that had previously appeared with each image.

Those changes were not technical or automatic. They altered the content and presentation of the website in ways that directly addressed the features Plaintiff challenges in this case. The reinstated page no longer displayed the same personal identifying information, and it again included an explicit statement of the presumption of innocence.

The corporate representative cannot explain how or why those decisions were made. He did not testify about who determined which features would be removed, who decided to restore the disclaimer, what considerations informed those choices, or what alternatives were evaluated. Nor did he identify any analysis, study, or data addressing the effects of publishing identifying information or the absence of a disclaimer in the prior version of the site.

The redesign therefore reflects the exercise of discretionary authority by the final policymaker then in office. It shows that the structure of the mugshot publication was not fixed or

ministerial but depended on policy judgments about what information to publish and how to present it. Those judgments bear directly on the purpose, operation, and justification of the policy.

Sheriff Sheridan is the only witness with first-hand knowledge of the decision to reinstate the website in that modified form and of the reasons for restoring the presumption-of-innocence disclaimer while removing the personal identifying information.

**E. No Substitute Witness Exists**

Despite this chronology, Defendants have refused to produce any witness who can testify regarding: (1) why successive Sheriffs chose to publish pretrial detainees' mugshots and personally identifying information ("PII") on the internet: (2) why the publication was structured as it was—namely, without a disclaimer of innocence during the class period; and (3) what the final policymakers knew about the reputational harm the practice was causing.

Their designated Rule 30(b)(6) witness has disclaimed knowledge of the reasons for these decisions and confirmed that the Sheriffs themselves are the only available sources.

Defendants nevertheless seek to bar the depositions of the very officials who made, implemented, ratified, suspended, and reinstated the challenged policy. That request would insulate the central policymakers from discovery on the only remaining claim—whether the policy was maintained for a punitive purpose.

**F. The Corporate Witness Was Instructed Not to Testify About the Decision-Making**

When Plaintiff questioned the Rule 30(b)(6) designee about the discussions and decisions that led to the suspension of the mugshot website in September 2024, defense counsel instructed the witness not to answer on the basis of attorney-client privilege. As a result, despite Plaintiff's objection to the invocation of a blanket privilege, the corporate testimony contains no facts identifying: who made the decision to take the website down, what information was considered, what alternatives were evaluated, or what reasons were given for that action.

The same limitation applies to the decision to reinstate the website in modified form in August 2025. The designee did not provide testimony regarding the decision-making process, the

considerations that led to the restoration of the presumption-of-innocence disclaimer, or the removal of personal identifying information.

These instructions do not merely limit a line of inquiry. They leave the corporate witness unable to provide factual testimony about the most consequential policy decisions during the relevant period.

On this record, the only individuals with first-hand knowledge of those decisions are the Sheriffs who held final policymaking authority at the time.

## III. PROCEDURAL BACKGROUND

On March 15, 2023, this Court dismissed Plaintiff's federal constitutional claims and exercised its discretion to decline jurisdiction over Plaintiff’s state law claims. Plaintiff filed an appeal with the Ninth Circuit Court of Appeals of this Court’s dismissal of the federal constitutional claims.

On September 5, 2024, in a published opinion, the Ninth Circuit reversed this Court’s dismissal in part. *Houston v. County of Maricopa*, 116 F.4th 935 (9th Cir. 2024). Specifically, the Ninth Circuit reversed this Court's dismissal of Plaintiff’s *substantive due process* claims, which protect pretrial detainees from punishment before an adjudication of guilt. The Ninth Circuit made clear that impermissible pretrial punishment requires proof of both harm and punitive intent. Testimony from the Sheriffs—who decided to implement, maintain, remove, and later reinstate the mugshot publication practice—is directly relevant to that intent element. The Ninth Circuit further held Defendants’ intent to punish may be inferred by its conduct, noting that Defendants’ “transparency” defense is central to this matter:

> The complaint plausibly asserts that the information the County posted about Houston is detailed and highly personal. The audience is global, as the information posted is accessible to anyone with an internet connection. The government's version of transparency suggests that public disclosure to any audience, however broad, of *any* information about what a government is doing is justified for its own sake. Not so. To defeat an inference of punitive intent, the County must articulate some *specific* concept of transparency that justifies public disclosure of *this* information to *this* audience. It has not convincingly done so at this stage of the case.

*Houston*, 116 F.4th at 942.

The Ninth Circuit held that Defendants must articulate a *specific, non-punitive justification* for publishing this information to a *global audience*. That inquiry is inherently about the decision-makers' objectives, their knowledge of the consequences of the practice, and the reasons the practice was maintained across administrations. Those facts reside with the Sheriffs themselves. They cannot be supplied through second-hand institutional testimony.

In light of this ruling, the specific reasons for the Sheriff's decision-making to publish mugshots, including the decision to include or remove a disclaimer of innocence when publishing mugshots, are paramount to this case. Furthermore, Plaintiff's municipal-liability theory against Maricopa County depends on tracing the decisions to publish mugshots to the Sheriffs themselves to establish that the challenged practices are attributable to officials with final policymaking authority in the relevant area. *McMillian v. Monroe County*, 520 U.S. 781, 785–93 (1997).

## IV. DEFENDANTS HAVE FAILED TO SHOW "GOOD CAUSE" FOR PRECLUDING PLAINTIFF FROM DEPOSING ANY SHERIFF

### A. The Sheriffs' Testimony is Paramount in this Matter

Defendants have failed to show "good cause" for the Protective Order under Federal Rule of Civil Procedure 26(c). Defendants bear the burden of showing "good cause," which requires a particularized showing of specific prejudice or harm and cannot be satisfied by broad, conclusory assertions. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130–31 (9th Cir. 2003).

Contrary to Defendants' assertions, Plaintiff's desire to depose the Sheriffs is not "apex" harassment. Plaintiff noticed the depositions of the Sheriffs because Plaintiff seeks, at minimum, sequential, temporally distinct policymaker testimony about discrete decisions:

1. *Former Sheriff Arpaio*: the origin, design, and articulated purpose of publishing pretrial detainee mugshots on the MCSO Website;
2. *Former Sheriff Penzone*: his knowledge and role as Sheriff during the majority of the class period and the removal of the presumption of innocence disclaimer;

3. *Former Sheriff Skinner*: the decision to end the policy of publishing mugshots of pretrial detainees on the MCSO Website; and

4. *Sheriff Sheridan*: the decision to reinstate the publication practice after removal and its current implementation.

Defendants seek to bar the depositions of any Sheriff who published mugshots on the official MCSO Website, including during the class period, 2020 through 2024. Defs' Mot. for Protective Order (Doc. 86 at 3-5).

Under Rule 26(c), the party seeking a protective order bears the burden of making a particularized showing of specific prejudice or harm—such as undue burden, oppression, or disproportionality—that would result from the requested discovery. Broad, conclusory assertions that discovery is "duplicative," "irrelevant," or merely inconvenient are insufficient, particularly where the discovery is directed to officials who exercised final policymaking authority over the challenged practice. *Phillips*, 307 F.3d at 1210–11; *Beckman*, 966 F.2d at 475–76; *Serrano v. Cintas Corp.*, 699 F.3d 884, 901–02 (6th Cir. 2012). The Sheriffs are the officials who made all material decisions associated with the adoption, continuation, changes, removal, and reinstatement of the challenged mugshot practices. Exhibit B at 329:22–330:16**.** Their personal knowledge is not available through any other source.

Defendants' written discovery posture highlights why specific policymaker testimony from the Sheriffs is required in this matter. As an example, in response to Plaintiff's request for admission directed to whether Sheriff Penzone was the final policymaker responsible for approving or allowing mugshot publication, Defendants objected, but admitted that the Sheriff is "considered the final policymaker for MCSO." Defendants' First Amended RFA Responses, Request No. 8. During deposition, Defendants admitted that each of the Sheriffs were the ultimate decision-makers on all relevant issues during their tenure. Exhibit B, pp. 327:3-335:24. Plaintiff is entitled to discover how that authority was actually exercised in practice, and specifically, whether the mugshot publications were authorized or approved at the Sheriff level. These are not collateral issues. They are core policy-attribution questions.

**B. Defendants' Claim for Apex Immunity Does Not Apply Here**

Although courts exercise caution regarding depositions of high-ranking officials, there is no blanket "apex immunity." The inquiry is functional: whether the official possesses unique, first-hand knowledge relevant to the claims and whether the information can be obtained through less burdensome means. *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

Both requirements are satisfied here. First, the Sheriffs have unique first-hand knowledge because they were the officials empowered to approve and continue the challenged practice and to set the objectives it served. Second, Defendants' proposed substitute discovery is inadequate: their Rule 30(b)(6) witness could not answer foundational questions about key features of the practice (including why the posts lasted three days) and testified only to "understanding" based on how things "always" were. Exhibit, p. 53:12-25. Moreover, the Rule 30(b)(6) designee reiterated in a continued deposition that the Sheriffs were, indeed, ultimate decision makers regarding the publication of mugshots on the MCSO website and the inclusion (or lack thereof) of a disclaimer of innocence. Exhibit B at 330:3–24, and 346:18–347:9**.** Indeed, the designee admitted that he was unaware of the Sheriff's knowledge regarding these matters, or whether anyone else—himself included—could explain the decisions regarding these matters other than the Sheriffs. *Id.*, pp. 346:18-347:15, 365:7–367:22.

Heads of agencies are subject to depositions when they have first-hand knowledge of matters material to the case. *See American Broadcasting Companies v. U.S. Information Agency,* 599 F, Supp. 765, 769 (D.D.C. 1984) (citing *Sykes v. Brown* 90 F.R.D. 77, 78 (E.D. Pa. 1981) (where an agency head possesses particular information necessary to the development or maintenance of the party's case, which cannot be reasonably obtained by another discovery mechanism, the deposition should be allowed to proceed); *Community Federal Savings & Loan v. Federal Home Loan Bank Board,* 96 F.R.D. 619, 621 (D.D.C. 1983) (the deposition of an agency head may be permitted when the official has relevant, first-hand knowledge of matters material to the decision that are not available from some other source).

Defendants cannot simultaneously argue that the policy's rationale and design choices are central enough to justify a "transparency" defense (and to contest punitive intent) yet also claim the policymakers' reasons and objectives are "wholly irrelevant." Such arguments defy credulity.

Even the transcript excerpts Defendants selectively attach as Exhibit 1 (Doc. 86-1) underscore the point: Defendants 30(b)(6) designee is not a substitute for the Sheriffs. Those excerpts reflect that he did not make the challenged policy decisions and lacks firsthand knowledge of the rationale, objectives, or intent underlying the publication practice. For example, Defendants' exhibit shows that when their 30(b)(6) designee was asked why the mugshots were only posted for three days on the MCSO Website, his answer was as follows:

> A. My understanding is that's just the way it always
> was. They just posted them for three days, and
> then -- then they removed them at the time.
> Q. Do you know why three days was chosen as opposed
> to one day or three weeks or a year or what have you?
> MS. BARNES: Form and foundation.
> THE WITNESS: I do not know the answer as to
> why only three days.

Defs' Mot. for Protective Order (Doc. 86), Exhibit A, p. 53:18-25.

"That's just the way it always was" is not a sufficient answer. *Somebody* made the decision to publish mugshots for only three days, and this issue goes right at the heart of Defendants' "transparency" arguments to justify the mugshot publications. And that person with knowledge is likely to be the ultimate decision-maker—the Sheriffs—as the 30(b)(6) designee admitted the Sheriffs were the ultimate decision and policymakers for the MCSO. Exhibit, pp. 327:3-335:24, 347:1-15.

Even if the Court were to apply a heightened standard for high-ranking officials, Plaintiff satisfies it. There is no blanket immunity for these officials. As the Ninth Circuit has explained, heads of government agencies are not normally subject to deposition absent circumstances showing necessity; that principle yields where the official's testimony is necessary and cannot be obtained elsewhere. *Kyle Eng'g Co.*, 600 F.2d at 231; *Apple Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259 (N.D. Cal. 2012) at 263–65, 267–68; *Estate of Levingston*, 320 F.R.D. at 525–27.

Despite Defendants' opportunity to produce another witness with knowledge to provide meaningful testimony regarding these decisions—if such a witness other than the Sheriffs themselves even exists—they have failed to do so. Because Plaintiff cannot obtain this information through other means, Defendants' motion must be denied.

**C. Rule 30(b)(6) Testimony Is Not a Substitute for Policymaker Testimony**

Defendants argue Rule 30(b)(6) testimony eliminates the need for Sheriff depositions. Defs' Mot. for Protective Order (Doc. 86). That misstates Rule 30(b)(6) and Rule 26(c). A corporate designee testifies as to the entity's knowledge and positions; it does not replace a party's right to depose percipient witnesses, particularly where final policymaker conduct and intent are at issue. *Sanders v. Circle K Corp.*, 137 F.R.D. 292, 293 (D. Ariz. 1991).

Rule 30(b)(6) testimony speaks to the entity's knowledge and positions; it does not substitute for percipient testimony from the final decisionmakers where the claim turns on *why* a policy was adopted and maintained. Here, the Ninth Circuit's ruling makes the County's purposes and objectives directly relevant to punitive intent.

Rule 30(b)(6) also imposes preparation obligations on the organizational defendant and its 30(b)(6) designee; it must make a conscientious, good-faith effort to prepare the designee using information reasonably available to the organization, including documents and interviews. *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co.*, 251 F.R.D. 534, 539–42 (D. Nev. 2008). Defendants' own testimony demonstrates that, even with that preparation requirement, the 30(b)(6) witness lacked first-hand policymaker knowledge on a host of issues, including adoption and design decisions. Exhibit B, *e.g.* at 243:1-21, 347:3-15, and 364:22-366:19.

**D. The Sheriffs' Testimony Is Central to Municipal-Liability Final-Policymaker Issues**

Plaintiff's remaining claim arises under 42 U.S.C. § 1983. Plaintiff must prove that the challenged practice constitutes unconstitutional pretrial punishment attributable to official policy. A municipality is liable under § 1983 where an official policy, custom, or practice causes constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipal

policy can be established by a single decision made by an official with final policymaking authority for the subject matter. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–83 (1986). Identifying final policymaking authority is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) at 123–30; *McMillian*, 520 U.S. at 785–93.

Arizona-specific authority recognizes that Arizona sheriffs act as final policymakers for their counties on law-enforcement matters within their statutory duties. *United States v. County of Maricopa*, 889 F.3d 648, 656–62 (9th Cir. 2018). Arizona authority also recognizes the Sheriff's policymaking role for jail administration. *Flanders v. Maricopa County*, 54 P.3d 837, 846–47 (Ariz. Ct. App. 2002). Consistent with Arizona authority, Defendant's own Rule 30(b)(6) designee admitted that the elected Sheriffs were the final decision-makers for the mugshot publication practices, including whether mugshots would be published and related website practices. Exhibit B at 329:22-332:25.

**E. Defendants Fail to Establish Proportionality and Burden & Expense**

The burden associated with four limited depositions is modest. By contrast, the importance of the discovery is substantial: it bears on the core issues of liability, intent, and municipal attribution under § 1983.

Defendants' "burden and expense" argument is unpersuasive. Counsel for both sides will likely expend more time litigating this Motion than would be required to conduct the limited depositions at issue. Defendants identify no concrete hardship, no quantified expense, and no operational disruption that would result from producing the Sheriffs for narrowly tailored examinations.

In a federal civil-rights class action challenging an official County policy spanning multiple administrations, the burden associated with a small number of depositions is minimal compared to the scope and importance of the claims. The Sheriffs are the final policymakers whose decisions define the policy at issue. Preventing Plaintiff from examining them would effectively preclude inquiry into the intent and rationale underlying the challenged publication practice.

Defendants contend that "[t]he Sheriffs' depositions are not proportional to the needs of the case," and that the depositions of Sheriff Arpaio and Sheriff Sheridan are "wholly irrelevant." Defs' Mot. for Protective Order (*see* Doc. 86 at 1). Plaintiff respectfully disagrees. The challenged practice spans multiple administrations and implicates an official policy affecting more than 300,000 pretrial detainees. The Sheriffs served as final policymakers for MCSO's jail and public communications functions during the relevant periods. Their testimony bears directly on the rationale, continuation, and reinstatement of the mugshot publication practice.

Under Rule 26(b)(1), proportionality considers the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, and the importance of the discovery in resolving those issues. In a class action of this scope, requiring a limited deposition of a final policymaker is not disproportionate. Nor is such testimony "wholly irrelevant" where punitive intent and municipal policy are central elements of Plaintiff's claims. To the contrary, preventing these depositions would deprive the Court of testimony uniquely within the knowledge of the officials whose decisions define the policy at issue.

Defendants' proportionality argument ignores the scope of the claims. Plaintiff seeks certification of a class consisting of hundreds of thousands of pretrial detainees whose booking photographs and identifying information were published while they were presumed innocent under the law. During Sheriff Penzone's tenure alone, MCSO published an estimated 280,000 mugshots.

Defendants identify no "annoyance, embarrassment, oppression, or undue burden" with specificity; they seek a categorical bar based primarily on relevance and substitution arguments, which the Ninth Circuit's merits framing undermines.

Even assuming several hours of testimony and reasonable preparation time, the burden on the Sheriffs is minimal when measured against the scale and duration of the challenged publication practice. Defendants identify no specific hardship, quantified expense, or operational disruption that would result from a limited deposition. Instead, they rely on generalized assertions of inconvenience. Such conclusory claims do not satisfy the particularized showing required to justify protective relief under Rule 26(c).

**F. Punitive Intent and Harm Place Policymaker Objectives and Knowledge at the Center of This Case**

Plaintiff's substantive due process theory necessarily focuses on whether the challenged practice amounted to punishment of a pretrial detainee. The Supreme Court's framework looks to whether a restriction is intended to punish or is not reasonably related to a legitimate governmental objective. *Bell v. Wolfish*, 441 U.S. 520, 535–39 (1979). The Sheriffs' testimony bears directly on the objectives underlying the challenged practice; the decision to publish mugshots in the first instance; the manner, format, and duration of publication; the inclusion of detainees' identifying information; and the Sheriffs' knowledge of the foreseeable reputational harm resulting from online publication of pretrial detainees' booking photographs.

The case now turns on intent. Why practice of publishing arrestee mugshots existed. What objective it served. What the Sheriffs (as final decision and policymakers) knew about its consequences. Why it continued. Why it was removed. Why it was reinstated. Those questions cannot be answered by an institutional surrogate who "understands" what others did or, more problematically, as here, one who has testified to not knowing any of those answers. They require the testimony of the officials who made the decisions.

**G. Defendants' "Statute-of-Limitations Window" Framing Misconstrues the Purpose of Discovery**

Defendants' effort to confine discovery by invoking a limitations period is misplaced. Statutes of limitation govern the timeliness of claims; they do not circumscribe the permissible scope of discovery. Where municipal liability turns on the existence of an official policy or custom and the knowledge of final policymakers, historical evidence is often essential to establish continuity, awareness, and deliberate indifference. Limitations doctrines do not operate as a bar to discovery of such evidence. *Oviatt v. Pearce*, 954 F.2d 1470, 1477–78 (9th Cir. 1992).

Defendants' statute-of-limitations framing is also internally inconsistent with their own reliance on policy continuity: they argue their Rule 30(b)(6) witness can testify about practices during Arpaio's tenure (pre-2016) to show "continuation" for "the same reasons." Defs' Mot. for

Protective Order (Doc. 86 at 4). Defendants cannot invoke earlier history when it helps them but bar Plaintiff from obtaining the same history directly from the decisionmakers.

### H. Privilege and Work Product Concerns Do Not Justify a Categorical Bar

Defendants speculate that some questions may implicate attorney-client privilege or work product. Defs' Mot. for Protective Order (Doc. 86 at 2 FN 2). That is not a basis for prohibiting depositions. Privilege objections must be addressed on a question-by-question basis. Defendants' privilege argument is premature and legally misplaced. Privilege protects communications, not facts. It does not bar depositions. It requires question-by-question objections. Nor does Rule 407 limit discovery. It governs admissibility at trial, not the scope of discovery. These are routine issues, not a basis for prohibiting testimony from the relevant decision-makers.

Attorney-client privilege protects communications, not underlying facts. *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981). Work product protects counsel's mental impressions and litigation preparation materials, not the fact of decisions, actions taken, or other nonprivileged facts. *Hickman v. Taylor*, 329 U.S. 495, 510–12 (1947). To the extent Defendants invoke a "subsequent remedial measures" theory to limit discovery, that argument is misplaced. The doctrine is evidentiary in nature; it governs admissibility at trial, not the scope of discovery. It does not create a categorical bar to obtaining testimony concerning the circumstances surrounding policy changes, nor does it eliminate the need for deposition testimony from the decision-makers who implemented or modified the challenged practice. *See Gauthier v. AMF, Inc.*, 788 F.2d 634 (9th Cir. 1986). At most, the doctrine may affect the admissibility of certain evidence for specific purposes. It does not insulate policymakers from discovery concerning the existence, operation, or modification of an official policy.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' request for a protective order.

RESPECTFULLY SUBMITTED this 26th day of February 2026.


*/s/ Daniel L. Kloberdanz*
Daniel L. Kloberdanz (SBN 012231)
**KOZUB KLOBERDANZ**
7537 East McDonald Drive
Scottsdale, Arizona 85250
Telephone: (480) 624-2700
dkloberdanz@bkl-az.com

Alex R. Straus*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
Telephone: (917) 471-1894
Facsimile: (310) 496-3176
astraus@milberg.com

William A. Ladnier*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (866) 252-0878
Facsimile: (865-522-0049
wladnier@milberg.com

Andrew Ivchenko (SBN 021145)
**ANDREW IVCHENKO, PLLC**
4960 South Gilbert Road, #1-226
Chandler, Arizona 85249
Telephone: (480) 250-4514
aivchenkopllc@gmail.com

*admitted *pro hac vice*

*Attorneys for Plaintiff Brian Houston and the Proposed Class*

## CERTIFICATE OF SERVICE

I, Daniel L. Kloberdanz, hereby certify that on February 26, 2026, I caused the foregoing document to be emailed to:

Sarah L. Barnes, Esq.
**BROENING OBERG WOODS &WILSON**
2800 North Central Avenue, Suite 1600
Phoenix, Arizona 85004
slb@bowwlaw.com

Roshin Bhangoo, Esq.
**BROENING OBERG WOODS &WILSON**
2800 North Central Avenue, Suite 1600
Phoenix, Arizona 85004
rsb@bowwlaw.com

*Counsel for Defendants Maricopa County and Sheriff Paul Penzone*

***/s/ Daniel L. Kloberdanz***
Daniel L. Kloberdanz