Alex R. Straus*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
Telephone: (866) 252-0878
Facsimile: (865) 522-0049
astraus@milberg.com

William A. Ladnier*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (866) 252-0878
Facsimile: (865) 522-0049
wladnier@milberg.com

*admitted *pro hac vice*

Andrew Ivchenko (SBN 021145)
**ANDREW IVCHENKO, PLLC**
4960 South Gilbert Road, #1-226
Chandler, Arizona 85249
Telephone: (480) 250-4514
aivchenkopllc@gmail.com

Daniel L. Kloberdanz (SBN 012231)
**KOZUB KOBERDANZ**
7537 East McDonald Drive
Scottsdale, Arizona 85250
Telephone: (480) 624-2700
dkloberdanz@bkl-az.com

*Attorneys for Plaintiff Brian Houston and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Brian Houston, a married man; and other persons similarly situated (the Class),

Plaintiff,

v.

Maricopa County Arizona; Paul Penzone, Sherrif of Maricopa County, Arizona; and Jane Doe Penzone,

Defendants.

Case No.: 2:22-cv-00875-SPL-MTM

**MOTION TO STAY PLAINTIFF'S EXPERT DISCLOSURE DEADLINE**

Plaintiff Brian Houston will, and hereby does, move to stay Plaintiff's expert-disclosure deadline. This Motion is based on this notice of motion, and the memorandum set forth below, on the records and file herein.

## I. PRELIMINARY STATEMENT

Plaintiff Brian Houston moves under Federal Rule of Civil Procedure 16(b)(4) to stay his expert-disclosure deadline—currently March 13, 2026—until this Court has resolved two pending matters: (1) Defendants' Motion for Protective Order (Doc. 86), which seeks to bar depositions of three former sheriffs whose testimony is central to Plaintiff's class-wide claims, and (2) Plaintiff's forthcoming motion to compel, which will address Defendants' sustained failure to produce documents and communications responsive to discovery served more than eight months ago.

This motion is not the product of inattention. It is the direct and foreseeable consequence of Defendants' sustained, documented failure to comply with their discovery obligations. Four barriers stand between Plaintiff and a meaningful expert disclosure.[1] First, Defendants have yet to complete a reasonable search for documents and communications responsive to timely discovery requests. Second, Defendants have refused to participate in class-wide discovery, limiting their responses to the named Plaintiff alone. Third, Defendants' Rule 30(b)(6) designee was so thoroughly unprepared that two sessions spanning six weeks could not cure the deficiency. Fourth, Defendants' pending motion for protective order seeks to bar testimony from the only officials who exercised final policymaking authority over the challenged publication practice. Until these gaps are filled and these motions are resolved, Plaintiff's experts cannot reliably opine on the class-wide issues at the heart of this case. Good cause and extraordinary circumstances both support the relief requested.

Defendants do not object to Plaintiff seeking additional time for expert disclosures.[2]

---

[1] Plaintiff's forthcoming motion to compel will provide a full recitation and analysis of the Defendants' discovery violations. The instant motion does not seek a ruling on the merits of the Parties' discovery dispute. Rather, the discovery issues presented herein are intended to highlight the current procedural posture of the discovery process as such relates to Plaintiff's expert report deadline.

[2] Plaintiff, through counsel, has engaged in multiple meet-and-confer communications prior to filing this motion, and informed Defendants that an extension of expert report deadline would be sought. Defendants responded that they "will not object to the additional time, but [] Defendants and defense counsel are not

## II. STATEMENT OF RELEVANT FACTS

On July 8, 2025, Plaintiff served sixteen interrogatories and twenty requests for production seeking information necessary for class-certification analysis and expert opinion. Defendants did not timely respond. They sought and obtained five successive extensions, then served materially deficient responses on October 1, 2025. After all those extensions, Defendants produced only two documents in response to twenty requests for production and provided substantive answers to only four of the sixteen interrogatories — without verification. One of the two documents produced contained non-functioning hyperlinks and was entirely useless. As of March 10, 2026, Defendants have produced six additional documents that are largely unresponsive to Plaintiff's Request for Production.

The Court granted the Parties' first discovery extension on September 15, 2025, resetting the expert disclosure deadline to December 11, 2025, and warned that "no further extensions will be granted absent extraordinary circumstances." Doc. 64, p. 2.

Between October and December 2025, Plaintiff repeatedly attempted to resolve the insufficiency of Defendants' discovery responses, sending multiple deficiency letters, insisting on engaging in meet-and-confer conferences, and requesting supplementation.[3] Defendants served four rounds of supplemental responses during this period—on November 12, December 1, December 3, and December 12, 2025—but those supplements failed to resolve any of the core deficiencies.

Throughout this period, Defendants made repeated commitments they did not honor. A meet-and-confer was finally held on November 12, 2025, during which Defendants stated they had

---

expressing any agreement with Plaintiff's characterization of the need for the additional time." Although the instant motion seeks to stay Plaintiff's expert disclosure deadline, Plaintiff would not oppose an extension of Defendants' expert disclosure deadline supported by good cause.

[3] Plaintiff sent deficiency letters on October 3 and October 10, 2025, identifying each deficiency with specificity and requesting supplementation within 14 days. Defendants requested an extension. Plaintiff agreed to the extension and requested a meet-and-confer conference to be held on October 31, 2025. Defendants did not supplement their discovery by the extended deadline and then cancelled the meet-and-confer conference. On November 5, 2025, the rescheduled date for the twice-cancelled meet-and-confer conference, Defendants cancelled again–stating they were not prepared to proceed just hours before the scheduled conference while promising that supplemental discovery would be served the following day. It did not.

conducted a document search but could not identify what search terms had been used or which databases had been searched. Before Defendants ended the conference prematurely and rescheduled discussion of the remaining issues until November 20, 2025. Defendants agreed in writing to provide specific information in advance of the rescheduled meet-and-confer in the interest of efficiency. On November 19, 2025, Defendants informed Plaintiff that they would not be providing the promised information and would not be attending the meet-and-confer as scheduled.

On November 20, 2025, the Court granted Plaintiff's second extension, resetting the expert disclosure deadline to March 13, 2026. *See* Doc. 69.

As the above abbreviated timeline of Defendants' discovery strategy and conduct confirms, the two previous extensions granted by this Court were necessitated by Defendants' pattern and practice of delays and broken promises.

**A. Document Production**

Defendants have produced only eight documents and six non-responsive spreadsheets in response to 20 requests for production. On November 12, 2025, when it became clear that Defendants had been unable or unwilling to conduct a reasonable search for communications and documents responsive to Plaintiff's discovery requests, Plaintiff sent Defendants proposed search terms with the explicit invitation to modify or replace Plaintiff's suggested terms with search terms created by Defendants. Despite repeated requests, Defendants refused. Defendants' position has always been that a reasonable search was already conducted.

Defendants' firm position is that no written or electronic communications exist regarding any of the most consequential events and decisions related to the publication of mugshots, including:

1. the decisions to publish mugshots, birthdates, and other soft biometric data;
2. the launch of the MCSO "Mugshot of the Day" contest;
3. the removal of that contest;
4. the decision to include an all-cap, bolded presumption-of-innocence disclaimer;
5. the decision to remove that disclaimer;
6. the decision to stop publishing mugshots entirely in 2024; or
7. the decision to resume publishing mugshots less than a year later.

On February 11, 2026, after months of refusing to conduct any additional search, on the morning of the meet-and-confer Plaintiff insisted upon as prelude to raising discovery issues with Magistrate Morrissey, Defendants made a 180-degree shift, promising to conduct a full search using search terms they created. Plaintiff accepted Defendants' proposed terms in their entirety without alternation and asked only for an anticipated schedule for the production of any responsive documents. Defendants promised to provide an anticipated schedule two days later, on February 13, 2026. That self-imposed deadline passed nearly a month ago. Defendants have not provided the anticipated schedule promised and have not produced a single additional document.

Plaintiff's experts cannot be expected to finalize opinions on a record that Defendants themselves acknowledged was incomplete when they reversed course on February 11 and promised a full search. Until that search is completed and its results produced, the factual foundation for expert analysis does not exist.

**B. Defendants Have Refused to Participate in Class-Wide Discovery.**

This is a putative class action on behalf of an estimated 23,000 to 90,000 individuals whose booking photographs and personal information were published on the MCSO website. Plaintiff's discovery sought information necessary to support class-wide expert analysis — including class member data, interrogatory responses directed at the scope and operation of Defendants' publication policy across the class, and documents sufficient to assess the policy's reach and effect. Defendants have refused. They have declined to identify class members, refused to answer interrogatories about class-wide policies and practices, and limited their document search to materials relating to the named Plaintiff alone. Their stated justification is that class-wide discovery is premature because no class has yet been certified.

The consequence is direct: Plaintiff's experts cannot calculate the size or scope of the class, analyze the policy's effect across its members, assess damages on a class-wide basis, or opine on commonality and typicality — the core questions a certification motion will require.

**C. Defendants' Rule 30(b)(6) Designees**

Defendants designated two witnesses to testify as MCSO's organizational representative: (1) Chris Hegstrom, whose testimony was interrupted by Defendants' scheduling conflicts, testified on January 8, 2026, and February 18, 2026; and (2) Kimberly Thompson, who testified on January 9th, 2026. [4]. Defendants failed to properly prepare either designee., One of Defendants' designees admitting she did not fully read Plaintiff's Rule 30(b)(6) notice before testifying. *See* Exhibit C p. 14:11-14. Across three deposition sessions and two designees, Defendants failed to produce a single witness capable of providing complete, knowledgeable testimony on the noticed topics. Even after the six-week intermission in his testimony, Defendants' Rule 30(b)(6) designee appeared for the second part of his deposition and still did not know 's extended interval did not cure his fundamental lack of preparation. when Plaintiff was arrested, why he was arrested, whether the charges resulted in a conviction or were dismissed, whether MCSO ever published Plaintiff's mugshot, how long it remained on the website, or whether any third party re-posted the image. *See* Exhibit B, pp. 239:5-18; 240:5-241:21. The witness — who also verified Defendants' discovery responses — could not answer the most basic, case-specific questions.

Defendants' second Rule 30(b)(6) designee was substantively unprepared on nearly every noticed topic. The foundational failures were stark: she did not fully read the Rule 30(b)(6) notice before testifying, reviewed no policies, procedures, manuals, or training materials, consulted no former employees, and brought no documents to the deposition. *See* Exhibit C, pp. 13:4–12; 14:11–14; 16:5–16.

The failure extended beyond Plaintiff-specific facts. Defendant's organizational representative did not know why Defendants published birthdates and other soft biometric data, (Exhibit B., p. 244:13-23), why the presumption-of-innocence disclaimer was included in 2011 and removed in 2016, (*Id*., pp. 253:17-254:4; 243:1-21), why the website was terminated in 2024, (*Id*.,

---

[4] Chris Hegstrom's, testimony on January 8, 2026 is attached hereto as Exhibit A, and his testimony on February 18, 2026 is attached hereto as Exhibit B. Kimberly Thompson's testimony is attached hereto as Exhibit C.

pp. 346:1-348:11), why it was restarted in 2025, whether any data on the effectiveness of mugshot publication was ever collected or considered (Exhibit A pp. 126:24-127:12, Exhibit B p. 359:7-11), or whether Defendants had ever evaluated if publication of booking photographs provided any public-safety benefit or any other value to MCSO (Exhibit A. pp. 72:20-73:2).

A Rule 30(b)(6) designee who cannot answer these questions — after two sessions, six weeks apart, with the benefit of conversations with the former sheriffs Defendants seek to shield — has not met the organization's preparation obligation. Plaintiff's experts cannot build reliable opinions on testimony that leaves the most consequential facts in this case unanswered.

**D. Defendants' Pending Protective-Order Motion**

On February 5, 2026, Defendants filed a Motion for Protective Order (Doc. 86) seeking to prohibit Plaintiff from deposing former Sheriff Joseph Arpaio, former Sheriff Paul Penzone, and current Sheriff Jerry Sheridan. That motion is fully briefed and pending. The Sheriffs are the only officials who exercised final policymaking authority over the challenged publication practice during their respective tenures. Their testimony is directly relevant to the history, purpose, and structure of the Mugshot Lookup practice — exactly the issues Plaintiff's experts must analyze. This Court's ruling on Defendants' motion for a protective order will materially define the factual record available to Plaintiff's experts, and that ruling must come before expert disclosures are required.

## III. <u>ARGUMENT</u>

**A. Good Cause and Extraordinary Circumstances Both Support a Stay.**

Federal Rule of Civil Procedure 16(b)(4) authorizes modification of a scheduling order "for good cause and with the judge's consent. "Good cause exists when the schedule "cannot reasonably be met despite the diligence of the party seeking the extension". *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992). The inquiry focuses primarily on the moving party's diligence. *Id.* Where an earlier order warned that no further extensions would be granted absent extraordinary circumstances, Plaintiff must satisfy that heightened standard as well. He does.

The record leaves no doubt about who bears responsibility for the current predicament. Plaintiff served discovery on July 8, 2025—eight months ago. Defendants took five extensions

before serving deficient responses. When Plaintiff identified deficiencies and sought supplementation, Defendants delayed, missed their own self-imposed deadlines, and appeared at meet-and-confers unprepared. When the time came for the Rule 30(b)(6) deposition, Defendants raised last-minute topic objections without having sought a protective order and failed to properly educate their designated deponent. Facing rapidly approaching discovery deadlines without sufficient discovery responses and an unprepared Rule 30(b)(6) designee, Plaintiff sought to depose the policymakers at the center of this case as the only remaining source for crucial information and documentation. In response, Defendants filed a motion to bar that testimony entirely. At every stage, Plaintiff acted promptly. At every stage, Defendants delayed.

These circumstances are extraordinary not because any single event is unprecedented, but because the pattern is sustained and unbroken. Courts in this circuit routinely find good cause and extraordinary circumstances where a deadline cannot be met because an opposing party has withheld the discovery needed to meet it. *See, e.g., Sheridan v. Reinke,* 611 F. App'x 381, 384 (9th Cir. 2015) (good cause supported by opposing party's discovery conduct). That is precisely this case.

**1. Defendants' Document Production Is Inadequate**

Defendants produced eight documents and six Excel spreadsheets in response to twenty requests for production. One was useless as it contained no responsive information apart from non-functioning hyperlinks. They provided substantive answers to four of sixteen interrogatories. They then designated a witness to verify those responses and testify as the organization's representative — a witness who, by his own admission, could not identify what search terms were used to locate responsive documents, which databases or systems were searched, or who conducted the search. Exhibit A pp. 38:3-5, 40:22-41:4. That admission is fatal to Defendants position that a reasonable search was conducted.

Rule 26(g)(1) requires that every discovery response be signed as certification that, after a reasonable inquiry, the response is complete and correct. A reasonable inquiry requires, at minimum, that counsel know what was searched, how it was searched, and by whom. *See Optronic Techs., Inc .v .Ningbo Sunny Elec. Co., Ltd*., 2020 WL 2838806 (N.D. Cal. June 1, 2020). Where the designee

who verified the responses cannot answer those threshold questions, the inference is plain: the search was not reasonable, and the production is not complete.

The privilege log reinforces that conclusion. Defendants did produce a privilege log — but it is conspicuously silent on the decisions that matter most. No document is logged regarding the decision to publish mugshots, birthdates, or other soft biometric data. No document is logged regarding the launch or removal of the "Mugshot of the Day" contest. No document is logged regarding the decision to include or remove the presumption-of-innocence disclaimer. No document is logged regarding the decision to terminate the publication practice in 2024 or to reinstate it less than a year later. A privilege log that withholds nothing on these issues does not establish that nothing exists. It establishes only that Defendants did not find anything — which, given what their own witness admitted about the search, is exactly the problem.

The notion that not a single email, memorandum, policy draft, or internal communication exists regarding any of these decisions — across multiple administrations, multiple staff changes, and more than a decade of operation — is not a conclusion that good-faith discovery supports. It is a conclusion that an inadequate search produces. Plaintiff's motion to compel will address the legal consequences directly. For present purposes, the point is simpler: expert disclosures cannot be meaningfully made against an incomplete factual record.

**2. Defendants' Refusal to Engage in Class-Wide Discovery**

This case is a putative class action. Plaintiff's experts must opine on class-wide issues—commonality, typicality, the reach and effect of Defendants' publication policy across a class estimated at between 23,000 and 90,000 members, and the basis for class-wide damages. Yet Defendants have treated this case as though only one plaintiff exists. Their refusal to participate in class-wide discovery is an independent and sufficient reason why meaningful expert disclosures cannot be made by the current deadline.[5]

[5] On February 11, 2026, after months of refusing to engage in any class-wide discovery, on the morning of a meet-and-confer conference scheduled as a precursor to raising discovery issues with Magistrate Morrissey, Defendant did another 180-degree position shift. Defendants agreed to provide the identity of all putative class members – while still refusing to produce the adjudication of the relevant charges – on or before February 13,

Defendants' stated justification—that class-wide discovery is premature because no class has been certified — inverts the proper sequence. Class certification depends on expert analysis. Expert analysis depends on class-wide discovery. Defendants' position, carried to its conclusion, would make certification impossible by design: no discovery, no experts, no certification. Courts in the Ninth Circuit have consistently rejected this bootstrapping argument. Pre-certification discovery into class-wide issues is routinely permitted—and routinely required—precisely because such discovery is necessary to support the certification motion itself. This determination is for the discretion of the trial court. *See Kamm v. Cal. City Dev. Co.,* 509 F.2d 205, 210 (9th Cir. 1975); *Gray v. First Winthrop Corp.,* 133 F.R.D. 39, 41 (N.D. Cal. 1990). Defendants cannot use the absence of a certification order as a shield against the very discovery needed to seek one.

Without class-wide discovery, Plaintiff's experts cannot calculate the size or scope of the class, analyze the policy's reach and effect across its members, assess damages on a class-wide basis, or opine meaningfully on commonality and typicality. An expert report built on the record Defendants have produced—facts about a single plaintiff, incomplete policy-level interrogatory responses, and no class member data—would not satisfy Rule 26(a)(2)(B) and would be vulnerable to exclusion on that basis alone.

**3. Defendants' Rule 30(b)(6) Designees Were Not Prepared to Testify**

Rule 30(b)(6) imposes a duty to prepare. The designated witness must be prepared to provide complete, knowledgeable, and binding testimony on the noticed topics—not merely to appear. *See Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co.,* 251 F.R.D. 534, 539 (D. Nev. 2008). The organization's obligation ends when it produces a prepared witness, not merely a present one.

Defendants did not meet that obligation. Their first designee, testified across two sessions spanning more than six weeks. That extended interval did not cure the fundamental failures. The witness did not know the most basic facts of the only named plaintiff in this case—facts that any

---

2026. Plaintiff welcomed Defendants' newfound understanding of their obligations. That self-imposed deadline passed nearly a month ago without any such production by Defendants.

adequately prepared organizational representative should have known before sitting down. Exhibit B, pp. 239:5-18; 240:5-241:21.

The failures extended to the policy itself. The designee could not explain why Defendants published birthdates alongside booking photographs, (*Id*., p. 244:13-23), why the presumption-of-innocence disclaimer was added in 2011 and removed in 2016, (*Id*., pp. 253:17-254:4; 243:1-21), why the publication practice was terminated in 2024, or why it was reinstated less than a year later (*Id*., pp. 346:1-348:11). He did not know whether any data on the effectiveness of the practice was ever collected or considered (*Id*., p. 359:7-11]. Rule 30(b)(6) requires an organization to prepare its designee to testify about information reasonably available to the entity; producing a witness unable to address such basic topics is treated as a failure to appear for a properly noticed deposition.

The inadequacy of Defendants' preparation was manifest from the outset. The designee arrived at the deposition without a single document, having made no effort to secure or identify materials responsive to the notice of deposition—conceding on the record that he had conversations with counsel "in lieu of searching for or identifying the documents requested." *See* Exhibit A, pp. 31:22-25; 39:14–23). Although the witness verified Defendants' interrogatory responses, he had not reviewed them for completeness. Omissions surfaced during the deposition itself, including an interrogatory answer that, by the witness's own admission, contained no time frame despite one being called for. (*Id*., pp. 210:19-212:23; 228:7-23; 223:5-15; 159:18-164:10). The witness could not speak to why the presumption-of-innocence disclaimer was removed from the website in 2016, testifying that to his knowledge it was never discussed by anyone at the Sheriff's Office prior to the filing of this litigation. *Id*., pp. 136:21–139:19). Notably, during the first portion of his deposition, the designee admitted that he never consulted with former Sheriff Arpaio, the sheriff in office during the relevant period when the Mugshot Lookup webpage was created, on decisions precisely within the Notice of Deposition, such as the policy of posting mugshots. Exhibit A p. 79:9-20. Six weeks later, after speaking with Sheriff Arpaio to educate himself for the remainder of Defendants' Rule 30(b)(6) deposition, Defendants' designee still had not discussed with Arpaio the presumption of innocence disclaimer, the decision to include personal and sensitive identifiers in mugshot

publications, and data and considerations into the effectiveness of the mugshot policy. Exhibit B, pp. 357:21-359:18.

Defendants' second designee, was similarly unprepared, admitting she did not fully read the Rule 30(b)(6) notice before testifying, reviewed no policies, procedures, manuals, or training materials, consulted no former employees, and brought no documents to the deposition. *See* Exhibit C, pp. 13:4–12; 14:11–14; 16:5–16. Her preparation consisted of reviewing a single internal database using only one search term—"mugshots"—a term no one at MCSO suggested to her—and relying on a single subordinate, Cody Baker, to conduct any additional searching. *Id*., pp. 14:5–9; 16:21–25; 27:18–22. She did not know what search terms Baker used or whether any other departments had searched their records. *Id*., pp. 91:18–92:22. Remarkably, she did not know what "30(b)(6)" means—even after being designated as MCSO's organizational representative on the noticed topics. *Id*., p. 111:2–10.

The substantive gaps were sweeping. Defendants' second Rule 30(b)(6) designee answered "I don't know" or its functional equivalent more than fifty times across the transcript. She did not know who handled website content decisions, how long MCSO had been publishing mugshots, whether MCSO's policy repository was searched in preparing for her deposition, who was in charge of relevant bureaus at the time the lawsuit was filed, or when MCSO first became aware of data-scraping activity on its website. *Id*., pp. 20:2–21:5; 24:13–25; 40:22–41:3; 51:17–21; 99:17–19. When asked directly whether MCSO's failure to properly educate her on these foundational issues was because MCSO chose not to gather the information for her review, Defendants' representative answered: "I don‘t have an answer for that." *Id*., p. 22:6–13.

The gaps extended to core liability issues. Defendants' representative was unaware of any internal discussions — at any level — about reconsidering the mugshot publication practice in response to public complaints received before this lawsuit was filed. *Id*., pp. 53:25–54:13. She was unaware of MCSO consulting any outside experts or IT personnel on ways to prevent unauthorized reuse of images by third-party websites, (*Id*., pp. 100:4–17), or of MCSO reviewing best practices from other jurisdictions that had discontinued mugshot publication over similar concerns, *Id*., pp. 75:2–13. And

she confirmed that no one at MCSO ever attempted to verify complaints received from the public regarding the mugshot publications, escalate them to leadership, or initiate any formal review before this lawsuit was filed. *Id*., pp. 101:21–102:10. Plaintiffs experts cannot build reliable opinions on testimony that is incomplete, uninformed, and internally contradicted by the organization's own litigation conduct—across not one designee, but two.

**4. The Pending Protective-Order Motion Creates a Scheduling Problem**

Defendants' Motion for Protective Order (Doc. 86) is fully briefed and pending. This motion takes no position on its merits. But the motion's pendency—regardless of how the Court resolves it—creates a scheduling problem that a fixed expert-disclosure deadline cannot accommodate. The Court's ruling will materially define the factual record available to Plaintiff's experts. Requiring disclosures before that ruling forces Plaintiff to either guess at the outcome or disclose opinions that may be incomplete, unsupported, or in need of wholesale revision the moment the Court rules.

The stakes of the ruling run in both directions. If the Court grants the motion, Plaintiff's experts must work within a record that excludes first-hand testimony from the officials who created, modified, suspended, and reinstated the publication practice. If the Court denies the motion, Plaintiff will be entitled to depose three sheriffs whose testimony bears directly on the purpose and design of the policy—testimony that will almost certainly require Plaintiff's experts to supplement, revise, or expand their opinions. In either case, expert reports filed before the ruling are premature.

Because a pending discovery ruling will materially affect the evidentiary record, requiring expert disclosures before that ruling issues wastes the resources of the parties and risks needless supplementation or exclusion disputes. A stay eliminates that problem cleanly. Once this Court rules on Doc. 86, the scope of the available testimonial record will be known. Plaintiff's experts can then form and disclose opinions based on a complete and legally settled factual foundation—made once, on a stable record, rather than twice on an unstable one. That outcome benefits everyone, including Defendants, who have a legitimate interest in receiving expert disclosures they can meaningfully respond to.

**5. A Stay Is More Appropriate Than Another Fixed Deadline.**

Rather than request a specific new date—which could again prove untenable if the pending motions resolve later than anticipated—Plaintiff requests that the expert-disclosure deadline be stayed until after this Court has ruled on both (a) Defendants' Motion for Protective Order (Doc. 86) and (b) Plaintiff's forthcoming motion to compel. Within seven days of the later of those two rulings, the parties will submit a joint proposed amended scheduling order setting a new expert-disclosure deadline not less than sixty days from the date of the later ruling.

A stay accomplishes what a fixed date cannot. It ensures that any discovery compelled by this Court will be available to Plaintiff's experts before their reports are due. It avoids the scenario—twice repeated already—where a deadline passes before the factual record is complete. And it places the pace of this case where it belongs: not in Defendants' hands, but in the Court's.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court stay the expert-disclosure deadline pending resolution of Defendants' Motion for Protective Order (Doc. 86) and Plaintiff's forthcoming motion to compel, with a new deadline to be set by joint proposed order within seven days of the later ruling, providing not less than sixty days for Plaintiff to complete expert disclosures after the record is finalized.

DATED: March 10, 2026


*/s/ Daniel L. Kloberdanz*
Daniel L. Kloberdanz (SBN 012231)
**KOZUB KOBERDANZ**
7537 East McDonald Drive
Scottsdale, AZ 85250
Telephone: (480) 524-2700
dkloberdanz@bkl-az.com

Alex R. Straus*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
Telephone: (866) 252-0878
Facsimile: (865) 522-0049
astraus@milberg.com

William A. Ladnier*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (866) 252-0878
Facsimile: (865) 522-0049
wladnier@milberg.com

Andrew Ivchenko (SBN 021145)
**ANDREW IVCHENKO, PLLC**
4960 South Gilbert Road, #1-226
Chandler, AZ 85249
Telephone: (480) 250-4514
aivchenkopllc@gmail.com

*admitted *pro hac vice*

*Attorneys for Plaintiff Brian Houston and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Daniel L. Kloberdanz, hereby certify that on March 10, 2026, I electronically transmitted the foregoing with the Clerk of the Court using the CM/ECF system for filing, with copies submitted electronically to the following recipients:

Sarah L. Barnes, Esq.
**BROENING OBERG WOODS & WILSON**
2800 North Central Avenue, Suite 1600
Phoenix, Arizona 85004
slb@bowwlaw.com

Roshin Bhangoo, Esq.
**BROENING OBERG WOODS & WILSON**
2800 North Central Avenue, Suite 1600
Phoenix, Arizona 85004
rsb@bowwlaw.com

*Counsel for Defendants Maricopa County and Sheriff Paul Penzone*

By: ***/s/ Daniel L. Kloberdanz***
Daniel L. Kloberdanz